Castle *v.* Duryea.

[ALBANY GENERAL TERM, September 3, 1860. *Gould, Hogeboom* and *Peckham,* Justices.]

CASTLE and wife *vs.* DURYEA.

What degree of care and caution are required from a military officer, while drilling his troops, in order to avoid the infliction of injuries upon individuals present as spectators.

And how far such officer is liable for an injury resulting from the negligence of himself or his subordinates, under such circumstances.

A defendant moving for a nonsuit is bound to bring to the notice of the judge the special grounds claimed as justifying it. A motion, general in its terms, will not present the objection that the action should have been *case* for negligence, instead of *trespass* for a direct injury. Formal objections should not be listened to by the judge, on a motion for a nonsuit, unless distinctly made.

Castle *v.* Duryea.

IN the month of July, 1855, the 7th regiment of the N. Y. state militia, commanded by the defendant as colonel, was duly encamped, pursuant to official orders, near the village of Kingston, for several days. On the 13th day of the month, Mary Ann Castle, the plaintiff, visited the camp ground, and was sitting, with her infant child in her arms in front of the regiment, in the midst of some 2000 spectators, at a place selected by the guard or other members of the regiment for visitors. This was on the north side of the parade ground where most of the spectators were collected. In the course of their evolutions the regiment was faced to the north, directly towards these spectators, and distant from them some 350 feet. The defendant stood 80 paces in front of the center of the regiment. By his order the men during the military exercises brought their muskets to a horizontal position, and aimed in the direction of the crowd in front. From this position the defendant gave the order to *fire!* Whereupon the guns supposed to be loaded only with blank cartridges were discharged, and Mrs. Castle and the child in her arms were wounded by a musket ball; the former seriously and the latter fatally. The child was injured in the head, and died in 3 or 4 days afterwards. The ball struck the plaintiff, passing through her left breast and thence through her left arm, breaking the arm and shortening it and injuring it temporarily, and perhaps permanently, rendering it nearly helpless. She lingered in a critical condition for a long time, but after the 10th or 12th day she improved and ultimately recovered. It was about six weeks before she was moved from her bed. About the first of September she was able to be conveyed to New York, where she remained in care of a physician until the first of November, when she was returned to her husband, there being still some discharge from the wound.

The plaintiff brought this action of *trespass* for the injury thus occasioned to her, which was tried at the Ulster circuit, before Hon. D. WRIGHT, justice, on the 22d day of May, 1857. On the trial it was proved that the firing by the reg-

iment, previous to the day of the accident, was to the east. The regiment was expected to fire blank cartridges; but on the morning of the occurrence the second company—the one fronting the plaintiff at the time she was wounded—had been engaged in target shooting, with ball cartridges, in a ravine adjacent to the parade ground: some of the guns were not discharged, though the caps exploded. Orders were given to have these guns taken to the rear, examined and unloaded—this examination was made, and the guns all supposed to be unloaded. There was also a general order that the commandants of each company should inspect the arms of his men thirty minutes before going into line, to see that they were not loaded. The company was then marched from the target exercise to the line then forming on the parade ground, and participated in the evolutions; and the firing shortly afterwards occurred.

The jury rendered a verdict in favor of the plaintiff for $1500.

The court charged the jury, among other things, in substance that the defendant, as commanding officer of the regiment, had not only the right but was charged with the duty to exercise and drill his regiment at Kingston, and to establish his encampment there; that he was not responsible for the injury complained of, if he exercised the prudent care and diligence demanded by the circumstances; nor unless the jury were satisfied he had been guilty of negligence, a negligence not to be presumed, but to be proved by the plaintiff; that no action could be maintained against him for an act done by him in the execution of his office and within the scope of his authority, if done with all reasonable care and caution; nor was he responsible for the negligence of those under his command, unless he made himself a party to the negligence by giving an improper order, or by neglecting to give a proper order, or by neglecting some precaution which prudence required him to adopt.

The court further charged that this was not a case of mas-

Castle *v.* Duryea.

ter and servant, or principal and agent, and therefore the defendant was not responsible for an injury resulting from the negligence of his subordinates unless caused by some improper order given, or some proper order omitted, or by omitting some precaution which prudence required him to adopt. That the use of powder and fire arms, under all the attendant circumstances connected with this case, required the highest degree of care. To this charge the defendant's counsel excepted.

The court stated to the jury the several grounds upon which the plaintiffs claimed to have established such negligence as entitled them to recover, and upon which the defendant claimed to have established such freedom from negligence as defeated the plaintiff's right to recover. The court further charged the jury that the question submitted to them was whether the defendant in giving the order to fire was or was not under the circumstances guilty of negligence, or whether he omitted to give any order or take any precaution which prudence required. To this charge the defendant's counsel excepted. That if the jury found that the order to fire was, under the circumstances, an act of carelessness or negligence, or some order or precaution was omitted, which prudence required, and that the injury to Mrs. Castle was the result, then the plaintiffs were entitled to a reasonable compensation for the injury; and in deciding upon the amount of damages the jury were authorized to take into consideration the question whether the injury was likely to be permanent. To this charge the defendant's counsel excepted.

The court further charged that the degree of care and diligence required to avoid an injury was in proportion to the seriousness and magnitude of the consequences which would probably ensue from the want of them. That gunpowder and fire arms were powerful agents, and it was proper for the jury to consider whether the person using them, under the circumstances detailed in the evidence, was not bound to exercise a high degree of care and diligence to prevent injury.

If such care and diligence were used, the defendant was not responsible, but he was responsible if the injury was caused by the order to fire, given by him, and that order was negligent and wrongful, or if the defendant had omitted any order or precaution which prudence required. To this charge the defendant's counsel excepted.

The defendant also made several requests to charge, with some of which the court refused to comply, and the defendant duly excepted. These are sufficiently noted in the opinion of the court. The defendant also, at the close of the plaintiff's evidence, moved for a nonsuit, which the court refused, and the defendant's counsel excepted. The exceptions were directed to be heard in the first instance at the general term.

*C. Cooke,* for the plaintiffs.

*C. W. Sandford,* for the defendant.

*By the Court,* HOGEBOOM, J. Inasmuch as no motion for a new trial has been made upon the judge's minutes, or at the special term upon the weight of evidence, or for excessive damages, but the case has been ordered to be heard in the first instance at the general term, we are restricted to the examination of *exceptions.* And of these none appear to have been taken to the admission or rejection of evidence. We must look, therefore, to the decision of the judge upon the motion for a nonsuit, and upon the charge and refusals to charge.

The defendant moved for a nonsuit on two grounds. 1. On the ground that there was no evidence to support the complaint, and none to go to the jury, upon which the defendant could be made liable. 2. On the ground that the defendant was acting as a public officer in the discharge of his duty, and was not liable, under the facts proved, for the injury sustained by the plaintiff. These grounds are stated in the

Castle *v.* Duryea.

most general form, and can scarcely be said to present any question for the decision of the court. It is not stated why or how there is no evidence to support the complaint; nor is attention invited to any particular aspect of the case, nor to the absence of evidence upon any particular point, nor upon any number of points combined, specifying what they were. I apprehend, under such circumstances, the judge is not called upon for a special exertion of his ingenuity or of his memory to see if he cannot devise some plausible objection to the plaintiff's recovery. The least that the defendant is called upon to do is to bring the special grounds, which justify a nonsuit, to his notice. I regard this rule as well settled by authority, and as highly reasonable upon principle.

Certainly such a motion does not present the question that the action should have been *case* for the defendant's negligence, instead of *trespass* for a direct injury. No objection whatever was taken to the form of the pleadings nor to the admissibility of evidence under them. If the objection had been taken, the pleadings would probably have been amended on the spot, had an amendment been deemed necessary. These formal objections must not be listened to, unless distinctly made.

Nor, if the motion were distinctly and specifically presented on the merits, ought the nonsuit, in my opinion, to have been granted. There was at least enough to go to the jury upon the question whether proper care had been taken in examining the muskets to see if they were unloaded; upon the question whether the defendant should have ordered the soldiers to fire in the direction of so large a body of spectators; or if so, whether the angle of elevation at which the guns were ordered to be fired, should not have been higher. There was therefore no legal error in refusing to nonsuit.

As to the *charge*, the substance of the legal propositions contained in it was, I think, as favorable to the defendant as the law would warrant. It held the defendant free from responsibility unless he had been guilty of negligence. It

held him responsible for the acts of others only in the event
that he had issued the order in conformity with which the
act was done, or had failed to take proper precautions pre-
paratory to the order, which, if such precautions were taken
would or might be a proper and prudent order, but would be
otherwise if those precautions were omitted. As to the ex-
istence of negligence, the judge seems to have fairly stated
the positions taken and claimed by each party upon that
point at the trial. The judge also charged that the degree
of care and diligence requisite was in proportion to the
seriousness and magnitude of the consequences, probable
from an absence of it. This is one mode, and I think not an
improper mode, of measuring the degree of care necessary to
be observed. In another part of the charge, he observed that
the use of powder and fire arms, under all the attendant cir-
cumstances connected with this case, required the highest
degree of care. The attendant circumstances were the fatal
consequences likely to ensue from carelessness in the use of
loaded fire arms, and the presence of a large body of spec-
tators near and in front of the troops, and there by the con-
sent or acquiescence of the commanding officer. A very high
decree of care—which is probably all that the judge intended
by the term *highest* degree of care, when taken in connec-
tion with other portions of his charge—and especially that
just previously quoted—was certainly requisite. It is
scarcely worth while to enter into an argument to determine
whether the highest possible degree of care was demanded. In
regard to carriers of passengers, the courts have frequently
said that the *highest* care and the *utmost* precautions are
requisite, even with regard to stage coaches as well as vehicles
propelled by steam, and a close and rigid comparison of the
two cases might probably show that at least as much care
would be necessary in the present case as in that of a carrier
of passengers by stage coach, although the latter was under
a contract for compensation for the transportation. But if
the charge was, upon a strict scrutiny, objectionable in this

Castle *v.* Duryea.

particular, I regard the exception as unavailable by reason of its covering other matter not exceptionable, favorable to the defendant and which the defendant asked the court to charge— to wit, that it was not a case of master and servant, or principal and agent, and that the defendant was not responsible for the negligence of his subordinates, unless done in consequence of his improper order or unjustifiable negligence.

As to the *refusals* to charge: 1. Taken in connection with the facts of the case and with the residue of the charge, the judge properly refused to charge in an unqualified form the defendant's first request that an action cannot be maintained against a public officer for an act done by him in the execution of his office and within the scope of his general authority. The judge in substance charged that proposition elsewhere, with the qualification (a proper one) that proper care should be observed in the performance of the act. 2. The judge in substance complied with the defendant's third and fourth requests, to wit, that the proof must show neglect of duty on the part of the defendant himself which occasioned the accident, and that if the colonel took the usual precautions or gave the proper orders, he was not responsible for the carelessness or negligence of his inferior officers. The request was faulty in this: *usual* precautions, unless they were *prudent* or *requisite* precautions, would not absolve the defendant from responsibility. The judge charged right in this particular. 3. The sixth request—to wit, that the injury was not sustained by any act, order or intent of the defendant—was properly refused upon the ground that it was a question of fact proper to be submitted, upon the evidence, to the jury. 4. The seventh and eighth requests, so far as they declare it to have been the duty of the defendant to exercise his regiment in the use of their fire arms, with ammunition, and that in giving the order to fire (after proper precautions) the colonel only discharged a legal duty within the scope of his authority, were essentially and indeed expressly complied with by the judge. So far as the 8th request declares that the firing of the regi-

ment in the *way and manner* they were firing at the time
the casualty occurred was a necessary part of their duty, it
presented a question of fact upon which the judge was not
called upon to pass, but was properly submitted to the jury,
or of mixed law and fact, on the law of which he properly
instructed the jury in that portion of the charge elsewhere
given.  5. The 9th request was correct in saying that the
colonel, officers and men were (in the parade drill and general
use of fire arms) engaged in the discharge of a common
duty imposed upon them by the laws of the state.  If it was
intended to say that they were engaged in the lawful dis-
charge of a duty in the particular case under consideration, it
involved the whole subject of inquiry before the jury, and was
properly refused.  So far as it declared that if the defendant,
in discharging his duties as colonel, gave the usual and proper
orders to his subordinates, who either by accident or design
did what they ought not to have done, in consequence of
which the plaintiff was injured, then the defendant was not
responsible, it was partly correct and partly incorrect, and
might have been properly rejected for that reason.  If by
proper orders the defendant meant orders proper in themselves
and given with proper precautions, the request was correct
and was complied with.  If the subordinates did what they
ought not to have done, and not in execution of the defend-
ant's proper orders, then the defendant was not responsible;
and, thus qualified, it presented the precise proposition which
the judge instructed the jury was the law of the case.  6. The
10th request, which was in part that this was not a case of
master and servant, or principal and agent, was so far com-
plied with by the judge.  The residue, to wit, that as the
colonel is placed in command of officers and men not selected
by him, he is not responsible for their care and skill, as each
has a duty peculiar to himself to discharge, is not unquali-
fiedly true.  If the officer, knowing the incompetency of his
subordinates, purposely assigns to them a task, in the execu-
tion of which it is reasonable to infer that negligence will

Castle *v.* Duryea.

occur and fatal consequences ensue, he is or may be responsible for the injuries thus occasioned. On this subject the judge seems to have taken so much of the proposition as was applicable to the facts of the case, and to have charged the law thereon correctly. 7. The 2d request—that negligence was not to be presumed but must be proved, and that the burden of proof was upon the plaintiff—was expressly complied with by the court. 8. The 5th request was refused by the court, and the defendant excepted. It was this; that if any negligence existed on the part of the defendant in exercising the regiment in firing blank cartridges, it was equally negligent in the plaintiffs to attend the parade, and they cannot sustain the action. This proposition involved a question of fact, and was properly refused. It was not necessarily negligence in the plaintiff to attend the parade. It may have been entirely proper, and does not appear to have been forbidden in any way by the defendant, nor any fault found with the place which the plaintiff occupied, at the time of the discharge of the fire arms which resulted in the injury. It was quite proper, therefore, for the court to decline absolutely to charge that the plaintiff could not sustain the action.

I have thus reviewed at length all the legal propositions taken by the defendant upon the trial, and am not able to see that any substantial error was committed by the judge in disposing of them, and I am therefore of opinion that a new trial should be denied.

Judgment accordingly.

[ALBANY GENERAL TERM, September 3, 1860. *Gould, Hogeboom* and *Peckham*, Justices.]