JEREMIAH CASTLE and MARY ANN CASTLE his wife, Respond-
ants, *v.* ABRAHAM DURYEE, Appellant.

At a regimental parade for military exercise and review, where a part of
the exercise was to fire with blank cartridges, one of the spectators,
stationed outside of the pickets, in front of the regimental line, and
distant about three hundred and fifty feet, was hit, and severely wounded
by a ball from one of the discharged pieces.

Upon an action for damages, against the colonel of the regiment who gave
the order to fire, he was held liable for any possible negligence on his
part by reason of which such accident could occur.

The particular negligence in this case would seem to have consisted in
firing *at all* toward a crowd of people, within musket range, where it
could not be *positively known* that no one musket in the whole regiment
contained anything more than a blank cartridge.

For discussion of the question, not passed upon by the court, whether the
defendant was not liable in damages for the accident, whatever precau-
tions he may have taken to prevent it, see opinion.

APPEAL from a judgment of the Supreme Court. The
action was in the nature of trespass for an assault of the
plaintiff, Mary Ann Castle, and wounding her by shooting
her with a musket ball. The answer was a denial of the com-
plaint. On the trial before Mr. Justice DEODATUS WRIGHT,
at the Ulster Circuit, the case was as follows : The defend-
ant was the colonel of the seventh regiment of New York
State militia, called "The National Guard ;" and he, with
his regiment, in July, 1855, went into camp, as it was called,
for one week at Kingston, Ulster county, pursuant to regular
division and brigade orders. On one day during the
encampment, the regiment was paraded for military exercise
and review, and was drawn up in line, extending about six
hundred feet from the extremities of each wing. It was a
part of the exercise to fire with blank cartridges, which was
repeatedly done, the order to fire being given personally by
the defendant, as colonel. There were a great number of
spectators stationed just without the line of pickets, in front
of the regimental line, and about three hundred and fifty
feet from it. Among these was the plaintiff, Mrs. Castle,

VOL. II.     22

who was sitting on a seat in the front row of spectators, with an infant child in her lap. On the third discharge, a ball passed through one of her breasts, mortally wounding the child, and breaking and splintering her left arm. Every attention which humanity could suggest was bestowed upon her by the surgeon, assistant surgeon and officers of the regiment, they paying the expenses out of the regimental fund, and erecting, at their own expense, a monument for the child. The plaintiff has partially recovered from her injury.

The defendant gave in evidence the regimental order for the encampment, which included a requisition for seven thousand rounds of blank cartridges for muskets, which it was proved were furnished.

It was proved that an hour or two prior to the parade, one of the companies of the regiment was engaged in shooting at a target with ball cartridges, in a ravine out of the way of spectators, using ammunition furnished by the company; and it was shown that some of the muskets did not go off, the cap exploding without igniting the charge; but it also appeared that when the firing at the target was concluded, the men were ordered to sound their muskets with their ramrods, and those which did not resound were ordered to the rear, and the guns were taken to the armory to be cleaned; and a sergeant was required by the captain to go round and take out all the cartridges from the cartouch boxes, and another sergeant accompanied him to see that it was properly done, and a commissioned officer was appointed to see that these subordinates did their duty, and he did as he was ordered. He examined the boxes and reported to the captain that every thing was correctly done, and the surplus ammunition was taken to the captain's quarters, and delivered into his hands. It was further proved that the colonel had issued and distributed a printed order, requiring each commandant of a company to inspect the arms of his men thirty minutes before going into line, and that this was done on the occasion referred to by forming the men into company parade, and examining each man's gun with the rammer. It was further sworn to by a captain that he did

not see any officer or men under the influence of liquor during the encampment.

The defendant moved for a nonsuit at the conclusion of the plaintiff's case, which was denied, and after all the evidence had been given, he desired the jury to be instructed to render their verdict for the defendant, which was also declined. Other instructions were prayed for, some of which were refused, and others given.

The judge charged, in effect, that the encampment, and the exercise of the men by firing, were lawful proceedings, and that the defendant was not responsible for the acts of the men on the principle by which a master or employer is held liable for the wrongful acts of his servant or agent; and that the defendant was not responsible for the injury complained of, if in the discharge of his duty he had exercised that prudent care and diligence which the circumstances demanded; that such care and caution should be in proportion to the seriousness of the consequences which would ensue from any neglect in that respect, and that a high degree of caution was required, and he submitted the case to the jury in this language: " That the question submitted to their consideration was, whether the defendant, in giving the order to fire in the manner he did, under all the attendant circumstances, was or was not guilty of negligence, or whether he omitted to give any order, or take any precaution, which, under the circumstances, he should have given or taken." He refused to submit to the jury the question of negligence on the part of the plaintiff in attending the parade.

The defendant's counsel excepted to the several rulings against him, and to all the principal propositions of the charge. The verdict was for the plaintiff for $1,500; and the judgment was affirmed at a General Term, upon which the defendant brought this appeal.

*W. H. Anthon,* for the appellant.

*J. H. Reynolds,* for the respondents.

DENIO, Ch. J.   No question is made but that the plaintiff was injured by the discharge of a musket, loaded with a ball cartridge, by one of the men in the ranks of the regiment; and the command to fire was given by the defendant, personally, to all the men; and the discharge was pursuant to and in obedience of that direction.   These facts constitute the defendant, *prima facie*, a trespasser to the same extent as though the musket was fired by his own hand.   The case does not arise out of negligence, for the injury was direct and immediate, and not consequential.   On the other hand, no question can arise but that the assemblage of the men for drill and military exercise was perfectly legal; nor, but that there was an utter absence of any intent to injure the plaintiff or any other human being.   The circumstance that one of the guns was loaded with a ball, was, as far as the defendant was concerned, purely accidental.   In a moral point of view, and upon the amount of damages to be recovered, it was a great alleviation that the defendant had taken all the usual precautions, and all which were deemed necessary to guard against such an accident.   The fact, however, remains, that the plaintiff was shot by the discharge of a loaded gun, and that its discharge was ordered by the defendant.   If it had occurred in the discharge of any public duty, which belonged to the defendant to perform, and which he had no other means of performing, the question would have arisen which the judge put to the jury, whether all the precautions had been taken which the circumstances of the case required.   For instance, if the defendant and his regiment had been called upon by the civil authority to quell a riot, and an innocent person had been shot, the question would have been, whether, under all the circumstances, all the precautions to prevent injury to innocent third persons which the case admitted of, had been taken.   But the defendant was not required by any public duty to cause his men to discharge their firearms at all while people were within musket range.   The manner in     h he was to drill and instruct them depended essential.    pon his judgment. and discretion.   He could have direct    he firing to take

place in the ravine where the target exercise occurred, or he could have stationed guards to keep off spectators at limits so remote from the parade, that no injury could possibly ensue. If he could have been sure that only blank cartridges would be used, he might safely order the firing to take place as it did. But, in my opinion, he, in directing the discharge, took upon himself, so far as a civil remedy was concerned, the responsibility of any injury which should result therefrom to any person. It is not the law, that if one, supposing a musket to be unloaded, or to be charged only with powder, snaps it at another, and he is wounded, he is irresponsible in a civil action; and it is of no consequence, so far as maintaining the action is concerned, that he acted upon the most plausible, or the most reasonable grounds, and fully believed that the gun was not charged with any thing which could injure another. In *Underwood* v. *Hewsen* (1 Strange, 596) the defendant was uncocking a gun, and the plaintiff standing by to see it, it went off and wounded him, and it was held that the plaintiff might maintain trespass. In an earlier case, reported in Hobart, the defendant, in trespass for an assault and battery, pleaded that he was, amongst others, by the commandment of the lords of the council, a trained soldier in London, of the band of one Andrews, captain; and so was the plaintiff; and that they were skirmishing with their muskets charged with powder for their exercise in *re militaire*, against another captain and his band, and as they were so skirmishing, the defendant, *casualiter et per infortunium et contra voluntatem suam*, in discharging his piece, did hurt and wound the plaintiff; *absque hoc* that he was guilty, *aliter sive alio modo;* and upon demurrer by the plaintiff, judgment was given for him. The report proceeds: "for, though it were agreed that if men in tilt or tourney in the presence of the king or of two masters of defense, playing their prizes, kill one another, that this shall not be felony,  *  *  *  *  yet, in trespass, which tends only to give damages according to hurt or loss, it is not so;  *  *  *  *  and, therefore, no man shall be excused of a trespass,  *  *  *  *  except it may be

judged utterly without his fault; as if a man by force, take my hand and strike you, or, if here the defendant had said that the plaintiff ran cross his piece when it was discharging, or had set forth the case with the circumstances, so as it had appeared to the court that it had been inevitable, and that the defendant had committed no negligence to give occasion to the hurt." ( *Weaver* v. *Ward,* Hob., 134.) These cases have been uniformly approved of in the English courts. They, with many others, are referred to in *Leame* v. *Bray* (3 East, 593), which was trespass for accidentally driving a carriage against another, in a dark night. The defendant was held liable. All the judges expressed opinions. I quote that of Gross, J., which contains the substance of all that was said: " Looking at all the cases from the Year Book, in 21 Henry VII, down to the latest decisions on the subject, I find the principle to be, that if the injury be done by the act of the party himself at the time, or, he be the immediate cause of it, though it happened accidentally or by misfortune, yet he is answerable in trespass. The case mentioned from Strange, that in Hobart, and those in the Term Reports, all agree in the principle."

I am of opinion, therefore, that the judge might properly have instructed the jury, that the evidence that the defendant had commanded the firing, and that one of the men fired a gun charged with a ball, by the discharge of which the plaintiff was wounded, was sufficient to sustain the action, whatever precautions the defendant and his subordinate officers had taken to provide against such an accident.

I am, moreover, of opinion that the judgment can be sustained upon the theory adopted by the judge. He put the case on the ground of want of due care and proper precaution ; and charged, in effect, that there could be no recovery unless the defendant had been guilty of negligence.

The defendant's exception to this instruction is based upon the assumption that the facts, which were clearly proved and were not contradicted, conclusively rebutted the imputation of negligence. These facts were certainly very strong. The defendant, in the nature of the case, was obliged to act by

the agency of his subordinates. The measures taken by his direction appear to have been very judicious and well calculated to secure what was aimed at, namely, that none of the muskets should be charged with ball. But they failed, as all such precautions will sometimes do. Some officer or man neglected his duty, or some ear failed in catching the true sound of the rammer, and a lamentable accident was the result. The negligence, in my opinion, consisted in firing at all into a crowd of people without positive knowledge that no one musket in the whole regiment contained any thing more than a blank cartridge. Let us see what chances there were for mistake. Ball cartridges had, that day, certainly been in the hands of a part of the men, and in their boxes. It was designed that they should all be taken out; but the duty of doing it had to be intrusted to a number of men of an average, or perhaps more than an average, grade of intelligence and prudence. General evidence was given that all the officers and men were sober; but there may have been an absent-minded man, or an excitable or an excited man, or one whose sense of hearing was not ordinarily acute among them. The occasion was of the nature of a holiday, and some of the men had been engaged in rivalry as to their skill in firing. Under such circumstances, it was easy to make a slip in that thorough and perfect examination which was necessary to secure absolute safety. We know that such a slip was made by somebody, and we can see that it was not very remarkable that it should have been made. When the question was as to the prudence of firing point blank at a crowd of people, I think the defendant was deficient in the care required by the circumstances, in ordering it to be done. But, if some minds should differ as to this, the judge, I think, was right in submitting the question to the jury. If the defendant had been bound by any law, or by public duty, to order that discharge of musketry, probably what was done by way of precaution would have been all that military usage required; but there was no such law, and he was under no such duty.

I do not think any fault is justly imputable to the plaintiff in being where she was. There was no evidence that she

knew that musket balls had been in the possession of any of the men, or even that they intended to fire at all. She was impliedly permitted by the defendant to be at the place where she was, and she was not bound to suspect that any thing would be done to endanger her life or limbs.

We have nothing to do with the amount of the verdict; but I cannot refrain from expressing my approval of its moderation. A very large amount was claimed in the complaint, which may well have justified the defendant in contesting, and we doubt not but that the appeal was brought with a view of having an interesting point of law settled by the court of final appeal.

The judgment must be affirmed.

Judgment affirmed.

NOTE.—The court did not pass upon the first branch of the case, discussed by the chief judge, as to the question of the general liability of the commanding officer.—REPORTER.