### TRAVELL v. BANNERMAN.

(Supreme Court, Appellate Division, Second Department. April 18, 1902.)

EXPLOSIVES—DUMPING ON VACANT LOTS—INJURY TO CHILDREN—NEGLIGENCE—ACTIONS—QUESTIONS FOR JURY.

An ammunition manufacturer used as a temporary dumping place for refuse material an unfenced lot adjacent to the factory, on which boys were accustomed to play. Plaintiff, while near the vacant lot, was approached by two other boys with a mass of material composed of caked gunpowder, which they had found on the vacant lot, and they all proceeded to extract pieces of brass therefrom. A part of the material operated on by a companion exploded, injuring plaintiff. *Held*, that an action may be maintained against the manufacturer for the injuries; it being a question for the jury whether proper care had been taken in dumping the material on the vacant lot.

Goodrich, P. J., dissenting.

Appeal from trial term, Kings county.

Action by Frank Travell, by George J. Travell, guardian ad litem, against Francis Bannerman. From a judgment for plaintiff, and an order denying defendant's motion for a new trial, he appeals. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

H. C. Smyth, for appellant.
Frederick E. Crane, for respondent.

WOODWARD, J. The defendant seeks the reversal of the judgment below for the sum of $600 damages awarded against him by the jury as compensation to the plaintiff for personal injuries alleged to have been suffered by him as a result of the want of due care on the part of the defendant in managing certain premises belonging to him. The evidence tends to establish the following facts: At the time of and before the injuries in question the defendant was the owner and in possession of a gun and ammunition factory in the block bounded by Bergen street, Utica, St. Marks, and Schenectady avenues, in the borough of Brooklyn. The factory premises were inclosed by a fence, but the adjoining lot, also owned by the defendant, and casually used as a temporary dumping place for ashes and other refuse material from the factory, was unfenced, and crisscrossed by paths worn by people of the neighborhood. For a long time the plaintiff, 14 years of age, and other boys, had used this open lot as a playground. On September 14, 1900, the plaintiff was standing in St. Marks avenue, just outside this vacant lot, when two younger boys approached him with a mass of black, asphalt-like material,

composed of caked gunpowder and old cannon primers. This mass, which was about a foot long, the boys had found among the rubbish on the vacant lot; and, after joining the plaintiff, they proceeded to extract the pieces of brass which it contained. In doing so, one of the boys (not the plaintiff) pounded the lump with a rock, and an explosion resulted, in which the plaintiff received the injuries which form the basis of this action.

There was sufficient evidence from which the jury could infer that the explosive material had been placed in the defendant's lot by his servants; but the defendant contends that, even admitting that the facts warrant this inference, no cause of action was made out. Counsel relies upon the well-known legal principle that for injuries caused by mere defects in the premises the owner is not liable to a bare licensee. It is certain that the plaintiff was not what the law calls a "licensee," for the injury occurred on the highway and the plaintiff had not on that day been on the defendant's land. It is also almost certain that the placing of highly explosive materials in a rubbish heap on an open lot resorted to by boys for a playground, and in a thickly inhabited neighborhood, does not come within the category of "mere defects in the premises." On the other hand, it would seem that the lump of caked gunpowder and pieces of brass would fall within the description of a dangerous and enticing machine, referred to in the leading case cited by counsel for the defendant (Walsh v. Railroad Co., 145 N. Y. 301, 307, 39 N. E. 1070, 27 L. R. A. 724, 45 Am. St. Rep. 615), where the court say that the turntable was, "as to children of tender years, a dangerous and at the same time an enticing machine,—one which, when seen, would inevitably and infallibly allure children to come upon it, and that the natural and probable result of such play would be the injury of the child." The pieces of brass were not without value as junk, and their presence in the rubbish would inevitably attract children eager to obtain a few pennies by selling what of value they might find among the refuse.

Beetz v. City of Brooklyn, 10 App. Div. 382, 41 N. Y. Supp. 1009, also relied upon by the defendant, had to do with a situation quite different from the one in our present case. The alleged dangerous material there was quicklime, commonly used as building material, and this court rejected the view that it was "as dangerous as exposed gunpowder"; the fair inference being that if it had been anything like gunpowder a different result would have been reached.

In Dixon v. Bell, 5 Maule & S. 198, the defendant sent a young girl to bring a loaded gun, after having instructed the man who had the gun to remove the priming. The girl brought the gun, and, thinking the priming had been removed, pointed the gun at plaintiff's son and pulled the trigger, discharging the contents of the gun and injuring the child. The defendant was held liable for negligence in leaving the gun without withdrawing the charge. "As by this want of care," says Lord Ellenborough, "the instrument was left in a state capable of doing mischief, the law will hold the defendant responsible."

In the case of Illidge v. Goodwin, 5 Car. & P. 192, a horse had been left unattended in a public street. A passer-by struck him, causing him to back the cart into plaintiff's shop window. The court,

per Tindal, C. J., held that the intervention of the passer-by did not absolve the defendant from liability for leaving his horse unattended. And in Lynch v. Nurdin, 1 Q. B. 29, Lord Denham says:

"If I am guilty of negligence in leaving anything dangerous, where I know it to be extremely probable that some other person will unjustifiably set it in motion, to the injury of a third, and if that injury should be so brought about, I presume that the sufferer might have redress by action against both or either of the two, but.unquestionably against the first."

For illustration, he gives the case of a gamekeeper who leaves a loaded gun against the wall of a playground, and a boy discharges it and wounds another boy. The chief justice continues:

"I think it will not be doubted that the gamekeeper must answer in damages to the wounded party."

These English authorities were cited and approved in Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455, where a manufacturer, who had carelessly labeled a deadly poison as a harmless medicine, and sold the same to a druggist, was held liable to a person who had bought the poison so labeled from the druggist, and was injured, without fault on her part, in consequence of the false label. Judge Ruggle's definition of "proximate cause" was repeated in Ryan v. Railroad Co., 35 N. Y. 210, 91 Am. Dec. 49,—a leading case on that subject, where the doctrine of Dixon v. Bell, supra, was approved; the court saying in reference to that case (page 211):

"The injury is a natural and ordinary result of the folly of placing a loaded gun in the hands of one ignorant of the manner of using it, and incapable of appreciating its effects."

The case of Williams v. Eady, 9 Times Law R. 637, affirmed in 10 Times Law R. 41, held defendant liable for not keeping a dangerous substance out of reach of boys at school. The jury were directed that, if a man keeps dangerous things, he must keep them safely, and must take such precautions as a prudent man would take, and to leave such things about in the way of boys would not be reasonable care. The court of appeal (Lord Esher, M. R., and Lopes and Kay, L. JJ.) dismissed the appeal; Lord Esher saying that there could be no doubt that the law was correctly laid down by the judge below.

Earl, C. J., in Potter v. Faulkner, 1 Best & S. 805, declared that "the law of England, in its care for human life, requires consummate caution in the person who deals with dangerous weapons."

In this state it has been held that a very high degree of care is required to be exercised by all persons using firearms in the immediate vicinity of others, no matter how lawful such use may be. Castle v. Duryea, 32 Barb. 480, 486, affirmed in *41 N. Y. 169. If defendant had gone upon or near the highway, and there exploded cartridges or firecrackers, to the injury of the plaintiff, he would have been liable. Conklin v. Thompson, 29 Barb. 218.

Judge Cooley, in his treatise on Torts (2d Ed., p. 356), says:

"Thus, leaving a tempting thing for children to play with exposed where they would be likely to gather for that purpose may be equivalent to an invitation to them to make use of it; and, perhaps, if one were to throw

away upon his premises, near the common way, things tempting to children, the same implication should arise."

And in Powers v. Harlow, 53 Mich. 507, 19 N. W. 257, 51 Am. Rep. 154, where a boy had been injured by playing with dynamite carelessly stored, the same learned author, then chief justice, said:

"Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are charged with a duty of care and caution towards them must calculate upon this, and take precaution accordingly. If they leave exposed to the observation of children anything which would be tempting to them, and which they, in their immature judgment, might naturally suppose they were at liberty to handle or play with, they should expect that liberty to be taken."

Every consideration of public policy demands the exercise of a very high degree of care of those who have in their possession or control explosive material inherently dangerous to life or limb, and especially is this true in thickly settled communities.

But the defendant contends that the materials in question in the case at bar were harmless until two outside agencies intervened,— the boy who carried the materials from the lot to the street, and the boy who struck the mass with a rock. Counsel continues with the following extraordinary statement in italics: *"In other words, it* [the lump which exploded] *was not dangerous until made so, not by the defendant, but by the plaintiff and his companions."* As well might he urge that the loaded gun in Dixon v. Bell, supra, was harmless until made dangerous by the pressure applied to the trigger by the child's hand. However, the question of intervention by a responsible human agency is raised, and should be met. It is a general rule that a person injured by the fault of another, without which fault the injury could not have occurred, is not to be deprived of his remedy because the fault of a stranger not in privity with him also contributed to the injury; for the original negligence still remains as a culpable and direct cause of the injury, and the intervening events and agencies which may contribute to it are not to be regarded. Lane v. Atlantic Works, 111 Mass. 136. See, also, Sheridan v. Railroad Co., 36 N. Y. 39, 93 Am. Dec. 490; Webster v. Railroad Co., 38 N. Y. 260; Barrett v. Railroad Co., 45 N. Y. 628; and Spooner v. Railroad Co., 54 N. Y. 230, 13 Am. Rep. 570. In the Lane Case the defendants had carelessly left standing in a public highway a truck loaded with iron. A boy 12 years of age called to the plaintiff, a boy of 7, to come across the street and see him make the wheels move, and while doing this a piece of iron fell from the truck and injured the plaintiff. The court say (page 141):

"It is immaterial whether the act of [the older boy] was mere negligence or a voluntary intermeddling. It was an act which the jury have found the defendants ought to have apprehended and provided against."

The maxim, "Causa proxima, non remota, spectatur," does not mean that the cause which is nearest in time or space to the result is necessarily to be regarded as the proximate cause (Vandenburgh v. Truax, 4 Denio, 464, 47 Am. Dec. 268; Guille v. Swan, 19 Johns. 381, 10 Am. Dec. 234; Thomas v. Winchester, supra; Eckert v. Railroad Co., 43 N. Y. 502, 3 Am. Rep. 721; Gibney v. State, 137

N. Y. 1, 33 N. E. 142, 19 L. R. A. 365, 33 Am. St. Rep. 690); and as Mr. Justice Jenks has pointed out, in Trapp v. McClellan, 68 App. Div. 362, 368, 74 N. Y. Supp. 130, the primary cause may be the proximate cause of a disaster. It is also a well-known rule that if the concurrent or successive negligence of two persons, combined together, results in an injury to a third person, he may recover damages from either or both, and neither can successfully plead that the negligence of the other contributed to the injury. Congreve v. Morgan, 18 N. Y. 84, 72 Am. Dec. 495; Colegrove v. Railroad Co., 20 N. Y. 492, 75 Am. Dec. 418; Barrett v. Railroad Co., 45 N. Y. 628.

A case wherein the facts bear a strong resemblance to those in our present action is that of Harriman v. Railway Co., 45 Ohio St. 11, 12 N. E. 451, 4 Am. St. Rep. 507. The defendant for a long time had permitted the public to pass over its road at a given point; and the court held that it was bound to exercise care, having due regard to such probable use; that it was negligence for the servants of such railroad company wantonly and needlessly to place at such point an apparently harmless, but in fact highly explosive and dangerous, object, like a signal torpedo, easily picked up and handled by children, and likely to attract them. A child of 9 picked up at the place in question such a torpedo, in ignorance of its dangerous character, carried it about 150 feet away, where the plaintiff, a boy of 10, and some companions, were standing. While there attempting to open the torpedo, it exploded, severely injuring the plaintiff. The court held that the negligence of the servants in placing and leaving such torpedo was the proximate cause of the injury, and that the defendant was liable. See, also, Penso v. McCormick, 125 Ind. 116, 25 N. E. 156, 9 L. R. A. 313, 21 Am. St. Rep. 211.

Walsh v. Railroad Co., supra, has been so strongly urged as an authority in the case at bar that a further reference to it is perhaps necessary. In affirming a principle opposed to the United States rule (Railroad Co. v. Stout, 17 Wall. 657, 21 L. Ed. 745), the court of appeals are careful to limit the doctrine to the facts in the case under consideration. After distinguishing Lynch v. Nurdin, supra, the court say (page 312, 145 N. Y., page 1071, 39 N. E., page 724, 27 L. R. A., and page 615, 45 Am. St. Rep.):

"In the case of this defendant, on the other hand, the turntable was on its own land; it was a proper and appropriate machine for the carrying on of its business; it was properly made; and it was properly used by the defendant."

Paraphrasing the sentence immediately following the quotation, we may say that to liken a turntable case to the allurement of children by throwing gunpowder and brass primers onto a rubbish heap in a lot commonly used as a playground is "to lose sight of the different principles upon which the cases rest." See, also, the case of Knight v. Lanier (Sup.) 74 N. Y. Supp. 999, where Mr. Justice Hirschberg has carefully distinguished the Walsh Case.

There was sufficient evidence in the case at bar of the lack of contributory negligence on the part of the plaintiff.

In view of the authorities above referred to, we think there was at least enough evidence to go to the jury upon the question whether proper care had been taken by the defendant in dumping material upon the lot in question; and the action may be maintained on the principle that the consequences complained of naturally and directly resulted from the careless and improper conduct of the defendant's servants.

No reversible error is revealed by our examination of the exceptions to the admission and exclusion of evidence. The charge fairly stated the law governing the case, and the judgment and order should be affirmed, with costs. All concur, except GOODRICH, P. J., who dissents.

GOODRICH, P. J. (dissenting). The defendant was owner and proprietor of a gun factory on a plot forming part of a large block bounded by Bergen street, St. Marks, Utica, and Schenectady avenues, in Brooklyn. The plot was about 88 feet wide, and ran through from Bergen street to St. Marks avenue. The factory was on the lots fronting on Bergen street, and was inclosed by a wooden fence. Workmen employed by the defendant in the factory were accustomed to throw refuse, rubbish, and ashes from the factory fire room onto the lots outside of the fence, to be subsequently carted away. The block was mostly open ground, and was criss-crossed by paths, one of which ran close to the rubbish heap. Children were accustomed to use the open block as a playground. In September, 1900, the plaintiff, a boy 14 years of age, while standing on the sidewalk of St. Marks avenue, saw two of his playfellows carrying a black chunk of material, which resembled asphalt, about a foot long, in which were embedded small pieces of brass and copper. It was proven to consist of old gun primers and materials of a highly explosive character. The three boys started to extract the metal from the substance, in order to sell it. The plaintiff had a portion of it, which he was breaking with his hands, when one of the other boys struck another portion with a stone, and that piece exploded and injured the plaintiff. There was evidence justifying the inference that the material came from the defendant's open lots, and was placed there by the defendant's servants. The plaintiff recovered a judgment, from which the defendant appeals.

The right of the defendant to place material upon his own land for the purpose of having it removed can hardly be questioned. There was no allegation in the complaint that the defendant had erected or maintained a nuisance, and the trial was not had upon that theory. The complaint alleged that "said injuries were caused by the carelessness and negligence of the said defendant, his agents, servants, or employés, in placing the said unsafe, dangerous, and explosive articles on the said vacant lots, and allowing the same to remain there." Hence the question of a nuisance is not in the case, and we must deal with it simply as an action based on the defendant's negligence. As expressed in his brief, the contention of the plaintiff is that "the defendant, having placed gunpowder in a lot

occupied by children and used by the public, was liable for. the natural consequences of an explosion and injury thereby."

The defendant contends that, the plaintiff being a mere licensee, the defendant owed him no duty, other than to refrain from doing him a willful injury; and, second, that he is liable only for the natural and probable consequences of a wrongful act or omission. The first of these propositions finds support in Cusick v. Adams, 115 N. Y. 55, 21 N. E. 673, 12 Am. St. Rep. 772, where it was said (page 59, 115 N. Y., page 673, 21 N. E., and page 772, 12 Am. St. Rep.): ·

"The principle is now well settled by repeated adjudications in this country and in England that where a person comes upon the premises of another without invitation, but simply as a bare licensee, and the owner of the property passively acquiesces in his coming, if an injury is sustained by reason of a mere defect in the premises the owner is not liable for negligence; for such person has taken all the risk upon himself. The theory of liability in negligence cases is the violation of some legal duty to exercise care."

In Beck v. Carter, 68 N. Y. 283, 23 Am. Rep. 175, where the plaintiff fell into an excavation adjacent to a·highway, the court said that the owner of land is not bound by the common law to fence it or in any way to mark the boundaries of his possession; he may leave it open, and a person entering thereon without permission is a trespasser; that it is. no excuse that the entry was made innocently and by mistake; and that the owner of land may make an excavation on his own premises, and is not bound to fence it for the protection of persons not lawfully on the land.

In Larmore v. Iron Co., 101 N. Y. 391, 394, 4 N. E. 754, 54 Am. Rep. 718, the court said:

"The precise question is whether a person who goes upon the land of another without invitation, to secure employment from the owner of the land, is entitled to indemnity from such owner for an injury happening from the operation of a defective machine on the premises, not obviously dangerous, which he passes in the course of his journey, if he can show that the owner might have ascertained the defect by the exercise of reasonable care. We know of no case which goes to this extent. * * * The owner of land in general may use it as he pleases, and leave it in such condition as he pleases. But he cannot, without giving any warning, place thereon spring guns or dangerous traps which may subject a person innocently going on the premises, though without actual permission or license, to injury, without liability."

An unfenced excavation intentionally created by an owner differs only in degree of danger from the piling up of the material here in question. If left untouched, it was not dangerous. If the jury were justified in finding that it was placed on the open lot by the defendant's workmen, the defendant did not exceed his rights in allowing it to be placed there. The existence of the paths over the block, ╒ven if they crossed the defendant's lots, might be interpreted as an invitation to the plaintiff to use them for the purpose of passage. It can hardly be said that it was an invitation to him or to his playmates to come upon the plaintiff's land outside of the paths, and remove property of the plaintiff which, though thrown upon a rubbish heap for the purpose of removal, had a value, even though nom-

inal. The defendant could have removed the material to his factory or elsewhere, or sold it. The theory of the plaintiff is that this material was the property of the defendant.

The second proposition of the defendant suggests the remoteness of the plaintiff's injury from any act of the defendant. It is not a case where the plaintiff, while passing over the defendant's open lot, was injured by an explosion to which no act of his contributed, or even where he picked up from the lot a piece of dangerous material placed there by the defendant; but it is a case where other boys, without permission, took property of the defendant from his premises, and carried it to the public highway, and there did some act which resulted in an explosion. In other words, the explosion followed and resulted from the intervention of a wrongdoer. The explosion would not have happened but for such wrongdoing of third persons. Nor is it a case where the explosion was caused by any act of the plaintiff in direct connection with the material, unless it may be said that all of the boys were engaged in a common enterprise, whereby we might be led to some curious results, but one occasioned by the act of one of the other boys, who had taken the material to the sidewalk and was hammering it. If the defendant is liable under such circumstances, why would he not be liable if a person had taken the material into another city or state, and upon the highway there caused an explosion to the injury of a passer-by? It would seem that this reductio ad absurdum is the logical result of the plaintiff's theory.

In Jex v. Straus, 122 N. Y. 293, 301, 302, 25 N. E. 480, it was said:

"The law requires that the injury must proceed so directly from the wrongful act that, according to common experience and the usual course of events it might. under the particular circumstances, have reasonably been expected. [Citing cases.] To justify the recovery of damages, they must be the natural and proximate consequence of the act complained of."

When doubt exists as to whether the damages are proximate, or speculative and remote, the question is properly one for the jury; but, where the presence of an intervening responsible agency is to be inferred from the undisputed facts, it is not error to withhold the case from the jury. Hoag v. Railroad Co., 85 Pa. 293, 27 Am. Rep. 653.

Beetz v. City of Brooklyn, 10 App. Div. 382, 41 N. Y. Supp. 1009, was an action against the city for damages for personal injuries. The city issued a permit to certain builders to use a portion of its public streets upon which to place building materials to be used upon a public building then in course of construction. Under this permit the builders placed upon the sidewalk some barrels of quicklime, which remained there for two weeks. Considerable quantities of the lime escaped upon the sidewalk through breaks in the barrels. The plaintiff (a boy seven years of age) and some other boys were playing on the sidewalk, and took some of the lime to build a play house on an adjoining lot. In doing this, they poured water on the lime, which exploded and destroyed the plaintiff's eyesight. This court (Mr. Justice Hatch writing) unanimously held that the placing of the lime on the sidewalk was not the proximate cause of the accident, and that, in order that an unlawful act may be held to be the proxi-

mate cause of an injury, the injury must result so directly from such act that, according to common experience and the usual course of events, the particular injury, under the circumstances, might reasonably have been· expected. The language of the opinion is peculiarly applicable to the present situation (pages 384, 385, 10 App. Div., and page 1011, 41 N. Y. Supp.):

"There is nothing which appears in the case having a tendency to establish that the lime, if left alone in the street as it was placed, would have inflicted injury upon any person, or that it would be likely to be so blown about as to inflict damage. Could the defendant, in reasonable contemplation, have supposed that children would carry this lime from the street to this vacant lot, and there attempt to make use of it in the manner described? We think to ask the question is to answer it. The lime was harmless as it lay upon the street. It was only made dangerous by the active intervention of two other agencies,—the boy who carried it, and its contact with water."

We also held that the question of proximate cause is usually one ·of fact for the jury, but where the case presents a clear case the question is to be disposed of by the·court; and affirmed a judgment dismissing the complaint on the plaintiff's opening.

The Beetz Case was cited and approved by this court in Saverio-Cella v. Railroad Co., 55 App. Div. 98, 101, 66 N. Y. Supp. 1023, where (Mr. Justice Jenks writing) we said:

"The law requires that the injury must so directly result from the wrongful act 'that according to common experience and the usual course of events it might, under the particular circumstances, have reasonably been expected.' [Citing Jex v. Straus, supra.] If the result was not within the ken of reasonable prudence and foresight, then proximate cause is not established. [Citing the Beetz Case.] And where the facts present a clear case, the question becomes one of law."

The case of Walsh v. Railroad Co., 145 N. Y. 301, 39 N. E. 1068, 27 L. R. A. 724, 45 Am. St. Rep. 615, familiarly known as the "Turntable Case," .is authority upon the present appeal. There the defendant had erected a turntable upon its own premises, which were unfenced. For a number of years the public had been accustomed to cross the premises from one street to another, and the paths were within 15 or 20 feet of the turntable. The plaintiff, a ·child six years of age, in company with other boys, was playing with the turntable, and turning it around, when the plaintiff's leg was caught, and he was injured. It was held that the·facts did not authorize the assumption that the public was invited to come upon the ground, and, while there was an implied license permitting the crossing, one availing himself of it was there by sufferance only, and while defendant owed him a duty not to injure him, either intentionally, or by a failure to exercise reasonable care, it owed him no duty of active vigilance; that the facts did not show a failure to exercise such reasonable care as to a violation of any duty which the defendant owed the plaintiff; that the defendant did not owe a ·duty to the public to keep the turntable fastened when not in use; and that a submission to the jury was error. The court said (page 312, 145 N. Y., page 1071, 39 N. E., page 724, 27 L. R. A., and page 615, 45 Am. St. Rep.):

"In the case of a defendant engaged upon his own land in simply doing that which it is necessary to do in order that he may carry on his business

properly, and who fails to exercise the highest vigilance in order to protect from possible harm children who may stray upon his land for no other purpose than recreation, we think that there is an absence of any fact upon which a jury ought to be permitted to find negligence."

In the Walsh Case the defendant owned all the premises on which the paths were used and worn. In the present case there is no positive .evidence that the paths crossed the plot owned by the defendant outside of the factory fence.

Wittleder v. Illuminating Co., 47 App. Div. 410, 62 N. Y. Supp. 297, differs materially from the case at bar. There the plaintiff went to play upon a stairway which the elevated railroad company had built for the use of its patrons (that is, the public generally), and, while playing there, extended his hands and touched or grasped an electric wire which the defendant had suspended upon the elevated railroad structure, and negligently allowed to become out of order, whereby the plaintiff was injured. He was not removing or attempting to remove the wire. We intimated that, if the action had been against the railroad company, we might, under Walsh v. Railroad Co., supra, have held the plaintiff to be a trespasser upon the property of the company, and that there could have been no recovery against it for an accident occurring thereon.

Thomas v. Winchester, 6 N. Y. 397, 57 Am. Dec. 455, is not authority upon the present question. There the defendant, a manufacturer, put up and sold to dealers poison in falsely labeled bottles. A person who purchased the same from a druggist was accidentally poisoned by a misuse of the contents, owing to the false label. The court said:

"Nothing but mischief like that which actually happened could have been expected from sending the poison, falsely labeled, into the market, and the defendant is justly responsible for the probable consequences of the act."

How can it be said that the defendant in the case at bar could reasonably have expected the unusual and extraordinary series of acts which resulted in the plaintiff's injury to follow placing upon his vacant lot, which he had not invited the plaintiff to use, an article which he had not invited or authorized the plaintiff to remove?

I think that there was error in the charge, prejudicial to the defendant, when the court said, "There is no question that an explosion of this kind would injure, because it did injure these boys." The defendant excepted, and the court substantially repeated the instruction. This took away from the jury all consideration of the character of the substance, about which there was conflicting· evidence, and prevented their inquiry as to its real character,—whether it was inherently explosive, so that it would necessarily injure, without reference to the method in which it was handled.

Upon all the facts, I am of· opinion that the defendant owed the plaintiff no duty other than to refrain from doing him a willful injury, and that the placing of the article upon his own lots adjacent to his factory was not the proximate cause of the plaintiff's injury; that the exceptions to the refusal to dismiss the complaint and to the charge were well taken; and that the judgment should be reversed, and a new trial granted.