Frank Travell, an Infant, by George J. Travell, his Guardian ad Litem, Respondent, *v.* Francis Bannerman, Appellant.

Negligence — Injury Resulting from Explosion — Insufficient Proof of Negligence. Where, in an action for damages for personal injuries sustained by an explosion, the only evidence of defendant's alleged negligence is that a piece of black material resembling asphalt, imbedded in which were pieces of brass, was picked up from a vacant lot owned by defendant, and adjoining his gun and ammunition factory, by two boys, who carried it to the street, and, in their efforts to extract the brass by pounding and breaking, it exploded, injuring the plaintiff, a bystander, and that on the day following the accident two handsful of the same material were found in the open lot and were seen on the roof of a shed within the inclosure occupied by the factory, and there is uncontradicted testimony that no such material was at any time thrown

or deposited in the open lot by the defendant or his employees, the submission of the question of defendant's negligence to the jury is reversible error.

*Travell* v. *Bannerman,* 71 App. Div. 439, reversed.

(Argued February 11, 1903; decided March 3, 1903.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered April 22, 1902, affirming a judgment in favor of plaintiff entered upon a verdict and an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Herbert C. Smyth* for appellant. Upon the evidence at the close of the entire case the complaint should have been dismissed or a verdict should have been directed for the defendant as a matter of law. (*Ruppert* v. *B. H. R. R. Co.,* 154 N. Y. 90; *Searles* v. *M. Ry. Co.,* 101 N. Y. 661.) Even admitting that the facts would warrant the inference that the defendant was resposible for the presence of the material in the open lot, no cause of action was made out. (*Cusick* v. *Adams,* 115 N. Y. 55; *Walsh* v. *F. R. R. Co.,* 145 N. Y. 301; *Beetz* v. *City of Brooklyn,* 10 App. Div. 382; *Saverio* v. *B. U. Ry. Co.,* 55 App. Div. 98; *Larmore* v. *C. P. I. Co.* 101 N. Y. 391; *Frost* v. *E. R. R. Co.,* 64 N. H. 220.)

*Bruce R. Duncan* for respondent. The defendant owed the plaintiff the duty to abstain from injuring him, either intentionally or by failing to exercise reasonable care. (*Walsh* v. *F. R. R. Co.,* 145 N. Y. 306; *Harriman* v. *Railway Co.,* 45 Ohio St. 11; *Knight* v. *Lanier,* 69 App. Div. 454; *Penso* v. *McCormick,* 125 Ind. 116; *Dixon* v. *Bell,* 5 M. & S. 198; *Williams* v. *Eady,* 9 L. T. Rep. 637; *Lynch* v. *Nurdin,* L. R. [1 Q. B.] 29; *Conklin* v. *Thompson,* 29 Barb. 218; *Powers* v. *Harlow,* 53 Mich. 507; Cooley on Torts [2d ed.], 356; *McMahon* v. *City of Pekin,* 27 L. R.

A. 206.)    The defendant failed to exercise the care which was thus required of him, and he is liable for the natural consequences of his acts.    (*Knight* v. *Lanier*, 69 App. Div. 454; *Harriman* v. *Ry. Co.*, 45 Ohio St. 11; *Dixon* v. *Bell*, 5 M. & S. 198; *Lynch* v. *Nurdin*, L. R. [1 Q. B.] 29; *Thomas* v. *Winchester*, 6 N. Y. 397; *Ryan* v. *N. Y. Cent. R. R.*, 35 N. Y. 210; *Williams* v. *Eady*, 9 L. T. Rep. 637; *Powers* v. *Harlow*, 53 Mich. 507; *McMahon* v. *City of Pekin*, 27 L. R. A. 206; *Herrick* v. *Wixom*, 80 N. W. Rep. 117.)

WERNER, J.    The history of this case is as follows: For many years the defendant has been the owner of a gun and ammunition works in the borough of Brooklyn, New York, on Bergen street, between Utica and Schenectady avenues. Defendant's works are inclosed by a high board fence, outside of and adjoining which there is an open vacant lot, also owned by the defendant, a part of which, near the fence, is used as a dumping ground for ashes, old metal and other refuse.    For some time the plaintiff and other boys in the neighborhood had used this open lot as a ball ground and had rummaged in the ash heap for scraps of brass and other things to sell.    On the 14th day of September, 1900, the plaintiff was standing on St. Marks avenue, just outside of the vacant lot watching some men engaged in work on the street.    Two of his boy acquaintances, Nesson and Woelfle, were in the lot near the ash heap and picked up a piece of black material resembling asphalt, about a foot long, embedded in which were pieces of brass.    They brought it to the place where the plaintiff was standing and proceeded to extract the brass therefrom by pounding and breaking.    This caused an explosion in which the plaintiff was injured.    At the trial it was shown that at some time within the week preceding the accident the defendant's employees had been burning out a quantity of old cannon primers that had become worthless except for old brass.    This was done outside of the factory, but inside of the inclosed yard.    These primers had been stored in two boxes in defendant's factory and had become corroded so that some of them

4

stuck together, but the evidence does not describe them in
such a way as to answer definitely to the description of the
material found by the boys. Neither does the evidence dis-
close satisfactorily the precise nature or description of the
residuum that was left after the primers had been put through
the crucible. There is no direct evidence showing how this
material came to be in the open lot where the boys found it.
The uncontradicted evidence of the witnesses for the defend-
ant was to the effect that the factory was closed from June
30th preceding the accident to October 4th following it, and
during that period the door in the fence leading to the open
lot was locked and was not opened. The key to the lock had
been lost, and shortly after the closing of the factory a canvas
was placed along the fence and in front of this door so that
it could not be opened without taking down or tearing the
canvas. During the period in which the factory was closed
a few men were kept at work. The rubbish that accumu-
lated during that time was deposited in the inclosed yard.
There was some evidence suggesting that the boys in the
neighborhood were in the habit of climbing the fence, which
inclosed the factory grounds, and getting upon a shed con-
nected with it. One of the plaintiff's witnesses testified that
on the day following the accident he saw on this shed, and
also among the rubbish in the vacant lot, pieces of the black
material found by the boys Nesson and Woelfle, which caused
plaintiff's injuries. The trial court submitted the case to the
jury for a general verdict, and also asked them to answer the
specific question whether the defendant had negligently
placed the explosive material in the open lot. The jury
answered this question in the affirmative and brought in a
general verdict for the plaintiff. The Appellate Division, by
a divided court, affirmed the judgment entered on this verdict.

Two questions are here presented for review : 1. Is there
any evidence of freedom from contributory negligence on the
part of the plaintiff ? 2. Is there any evidence of negligence
on the part of the defendant ? The question whether the
plaintiff, in view of his age, the appearance of the material,

and all the facts of the occurrence, was guilty of contributory negligence was clearly one of fact for the jury. (*Thurber* v. *Harlem B., M. & F. R. R. Co.*, 60 N. Y. 326; *Barry* v. *N. Y. C. & H. R. R. R. Co.*, 92 id. 290; *Reynolds* v. *N. Y. C. & H. R. R. R. Co.*, 58 id. 248, 252; *Haycroft* v. *L. S. & M. S. R. Co.*, 2 Hun, 489; affd., 64 N. Y. 636.)

Upon the alleged negligence of the defendant we have a much more serious question. The defendant had in his possession an explosive substance, and he was bound to the exercise of a high degree of care to so keep it as to prevent injury to others. (Shearman & Redfield on Negligence [5th ed.], sec. 689.) In the inclosed yard, where it was originally placed, it would probably have caused no accident, for it was there handled exclusively by experienced employees. In the open lot outside of the fence, where children were in the habit of playing, it was, or at least might become, a dangerous agency. It is obvious, at a glance, that plaintiff's case cannot stand the test of review unless it contains evidence which directly, or by reasonable inference from established facts, connects the defendant with the deposit of this material in the open lot. If there is such evidence, then the question of defendant's alleged negligence was properly submitted to the jury as one of fact; if there is no such evidence, the defendant's motion to dismiss the complaint should have been granted. Both of the opinions below assume that there is evidence tending to show that the defendant, or his servants, placed in the open lot the material which caused the plaintiff's injuries. As we read the record, it is not only barren of evidence to prove this essential part of the plaintiff's case, but it shows quite conclusively that the material in question was not deposited in the open lot by the defendant or his servants. As stated, the accident happened on the 14th day of September, 1900. The uncontradicted testimony of five or six witnesses for the defendant is that, from June 30th until October 14th of that year, the gate or door leading from defendant's inclosed grounds to the open lot was locked because the works were shut down. The key to the gate was lost about July

1st and was never found, so that in October, when the use of the gate was resumed, a new padlock was put on. During the time that the works were shut down this gate was further secured by canvas nailed across it which was used as a sort of awning for the men who worked in the yard. The defendant's son, and every one of the employees, testified positively that no such material, as above described, was thrown or deposited in the open lot by them at any time. As against this positive testimony the plaintiff's case, upon this point, discloses nothing except that the piece of material which caused the injury was found in the open lot by the two boys Nesson and Woelfle, and that on the day following the accident a man named McDonald found two handfuls of the same material in the open lot and saw a piece of it on the roof of the shed within the inclosure. The gravamen of the charge against the defendant is that he, or his servants, negligently placed in the open lot adjoining his inclosed premises a highly explosive and dangerous substance. As the case comes to us from a divided court the question, whether there is any evidence to sustain the charge, is one of law open to review in this court. We think there is no such evidence. Negligence must be proved. It cannot be presumed. The plaintiff's case is no stronger than its weakest point. It fails just where the plaintiff seeks to connect the defendant with the accident which caused the injury to the former. As we have stated, this indispensable part of plaintiff's case could have been established only in one of two ways; either by direct evidence, or by proof of facts from which the proper inferences could have been drawn. It is not claimed that there is any direct evidence upon the subject, and we think there was no indirect evidence from which the jury had the right to draw the inference that the material which injured the plaintiff was deposited in the open lot by the defendant or his servants. Plaintiff's evidence was as consistent with the absence as with the existence of defendant's negligence and it was error, therefore, to submit that question to the jury. (*Baulec* v. *N. Y. & H. R. R. Co.*, 59 N. Y. 357 : *Rup-*

*pert* v. *Brooklyn Heights R. R. Co.*, 154 N. Y. 94.)   In view of this failure of proof, we need not discuss the other legal questions which would be pertinent if the defendant's connection with the accident had been satisfactorily established.

The judgment below should be reversed and a new trial granted, with costs to abide the event.

PARKER, Ch. J., GRAY, O'BRIEN, HAIGHT, MARTIN and VANN, JJ., concur.

Judgment reversed, etc.