WILLIAM J. PERRY, as Administrator of the Estate of WILLIAM J. PERRY, JR., Deceased, Appellant, *v.* ROCHESTER LIME COMPANY, Respondent.

Nuisance — explosives illegally stored in open chest on public land — death of boy through explosion of caps stolen therefrom — when not proximate result of wrong.

The defendant stored a chest containing nitroglycerin caps upon public land in the city of Rochester without a permit and in violation of a city ordinance. The caps were packed in tin boxes which in turn were contained in unmarked wooden boxes. The chest having been left open two boys stole one of the wooden boxes and hid it in a barn near the home of the parents of the plaintiff's intestate with whom they resided. The next day the boys left the barn carrying the box, and the intestate, a boy of eight years, ran after them. A few minutes later there was an explosion and the three boys were killed. In an action to recover for the death of the plaintiff's intestate, *held*, that his death was not the proximate result of the open chest in the highway; that the defendant had done nothing to invite or provoke the theft; it had not scattered the caps about, or even exposed them to view, so that children might feel tempted, and perhaps licensed, to handle and play with them; it had packed the caps in tins, and then hidden the tins from sight by packing them in wooden boxes. The theft of one of the boxes was no more to be looked for than the theft of the whole chest; a series of new and unexpected causes intervened and had to intervene before these explosives could bring death to the intestate.

*Perry* v. *Rochester Lime Co.*, 163 App. Div. 934, affirmed.

(Argued June 1, 1916; decided July 25, 1916.)

APPEAL, by permission, from a judgment, entered June 5, 1914, upon an order overruling plaintiff's exceptions, ordered to be heard in the first instance by the Appellate Division, denying a motion for a new trial and directing judgment for defendant upon the nonsuit granted at the Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

. *C. B. Kiehel* and *Claude S. Smith* for appellant. It was a question of fact for the jury to determine from the evidence in the case whether the respondent maintained a nuisance on the banks of the canal and if the jury found that the respondent maintained such a nuisance, the appellant's right to damages must follow. (*People v. Sands*, 1 Johns. 78; *Meyers v. Malcolm*, 6 Hill, 292; *Heeg v. Licht*, 80 N. Y. 579; *Cohen v. Mayor, etc.*, 113 N. Y. 532; *Wells v. City of Brooklyn*, 9 App. Div. 61; *Prussak v. Hutton*, 30 App. Div. 66; *Wittleder v. C. E. I. Co.*, 47 App. Div. 410; *Travell v. Bannerman*, 174 N.Y. 47; *Frank v. Vil. of Warsaw*, 198 N. Y. 463; *Thomas v. Winchester*, 6 N. Y. 397; *Torgesen v. Schultz*, 192 N. Y. 156; *Statler v. Ray Mfg. Co.*, 195 N. Y. 478.) Any intervening or contributing cause or causes of the intestate's death do not preclude a recovery against the defendant, but the liability may be attributed to all of them. (*Ring v. Cohoes*, 77 N. Y. 83; *Lilly v. N. Y. C. & H. R. R. R. Co.*, 107 N. Y. 566; *Kremer v. N. Y. Edison Co.*, 102 App. Div. 433; *Murphy v. H. R. Tel. Co.*, 127 App. Div. 450; 196 N. Y. 505; *Rossiter v. C. G. Factory*, 155 App. Div. 413.) The defendant owed to plaintiff and other children who frequented the canal bank and who played and fished in this public place, a duty of precaution against harm, and any interference with the contents of the wooden chest might reasonably have been anticipated by the defendant. (*Schmidt v. Cook*, 12 Misc. Rep. 449; *Kuntz v. City of Troy*, 104 N. Y. 344; *Ramsey v. Nat. Cont. Co.*, 49 App. Div. 11; *Whittleder v. C. E. I. Co.*, 47 App. Div. 410; *Travell v. Bannerman*, 174 N. Y. 47.)

*Percival D. Oviatt* for respondent. In order to render the defendant liable in this action whether it be said that the defendant was guilty of maintaining a nuisance or was guilty of negligence, the wrongful act of the defendant must be the proximate cause of the injury. (*Laidlaw*

v. *Sage*, 158 N. Y. 73; *Ehrgott* v. *Mayor, etc.*, 96 N. Y. 264.) No act or omission on the part of the defendant can possibly be said to have been the proximate cause of death. (*Martin* v. *Althaus*, 139 App. Div. 622; *Miller* v. *Bahmmuller*, 124 App. Div. 558; *Demarest* v. *42d St., M. & St. N. Ave. Ry. Co.*, 104 App. Div. 503; *Rider* v. *Syracuse Ry. Co.*, 171 N. Y. 139; *Trapp* v. *McClellan*, 68 App. Div. 362; *Independent I. C. Co.* v. *United I. C. Co.*, 69 Misc. Rep. 623; *Beetz* v. *City of Brooklyn*, 10 App. Div. 382; *Tucker* v. *N. Y. C. & H. R. R. R. Co.*, 124 N. Y. 308; *McDonald* v. *Met. St. Ry. Co.*, 80 App. Div. 233; *Fortune* v. *Hall*, 122 App. Div. 250.)

CARDOZO, J. The defendant stored explosives in a chest on the bank of the Erie canal in the city of Rochester. It stored them in a public place and in violation of law. Two boys carried away some of the boxes, secreted them in a barn, and handling the contents the next day, brought about an explosion. A little boy of eight years who was near them, was killed. The question is whether the defendant may be held to answer for his death.

A narrow strip of land separates the defendant's warehouse from the Erie canal. This land is public property. Boys were accustomed to go there to play and to fish. On this public space the defendant kept a chest of nitroglycerin caps, used to explode dynamite. The caps were packed in tin boxes, which were marked "Blasting caps, handle with care;" and the tin boxes were packed in a wooden box. The wooden boxes were without marks; they had sliding covers, which were closed; and they were about one foot long and nine inches high. Each wooden box contained at least thirty-three tin boxes.

On Sunday, November 12, 1911, this chest of explosives was left open. It was seen in that condition during the afternoon and evening by the operator of a nearby bridge. The practice had been to keep it closed and locked. So far as the record shows, it had never been

left open before. Between five and six o'clock, John
McGuire, a boy of thirteen years, and Archie Clark, a
boy of twelve, went by the warehouse on an errand.
There is evidence that on their way back they stopped at
the chest and carried off one of the wooden boxes. They
took supper that evening at the house of a friend.
Before supper, they hid the boxes in the back yard.
During the evening they showed the caps to their play-
mates. They had some of the tin boxes in their hands
and other caps in their pockets. Before they left for
home, they went to the yard, emptied the contents of
most of the tin boxes into the wooden box and carried
the spoils away. Arriving home, they hid the box in a
neighboring barn. Their home was with the Perry
family, and about half a mile from the defendant's
warehouse.

After school hours the next day, Mrs. Perry saw
McGuire in the barn, and heard him call to Clark to join
him. They came out of the barn with a wooden box.
She did not know at the time what was in it. They
walked off, carrying the box, and the Perry boy, eight
years of age, ran after them. The mother sent her little
girl to call the boy back, but he was out of sight. A
few minutes later, there was the sound of an explosion.
McGuire and Clark and the Perry boy were killed.
This action involves the defendant's liability for the death
of Perry only.

The defendant stored the explosives without a permit
and in violation of an ordinance. It stored them, more-
over, in a public place. It thus became a wrongdoer,
and answerable as such for the proximate consequences of
the wrong. It became answerable, in other words, for
those consequences that ought to have been foreseen by a
reasonably prudent man (*Atchison, T. & S. F. Ry. Co.
v. Calhoun*, 213 U. S. 1, 7; *McDowell* v. *Great Western
Ry. Co.*, L. R. [1903] 2 K. B. 331, 337; *Hall* v. *N. Y.
Telephone Co.*, 214 N. Y. 49). But we cannot say

that what was done with these explosives was something that ought to have been foreseen. The chest, it is true, was open, but the caps were not exposed. A large wooden box hid them. The boys did not play with caps scattered about loosely. They did not play at all. They carried away a large wooden box containing thirty-three smaller boxes, and appropriated the contents. They stole the caps in quantities that must have carried notice even to boys of their age that the act was wrongful. Indeed, there is good reason to believe that they stole, not for play, but for profit, intending to sell the spoils as junk. The defendant had done nothing to invite or provoke this theft. It had not scattered the caps about, or even exposed them to view, so that children might feel tempted, and perhaps licensed, to handle and play with them. It had packed the caps in tins, and then hidden the tins from sight by packing them in wooden boxes. The theft of one of the boxes was no more to be looked for than the theft of the whole chest. It was possible, of course, that the contents would be stolen by boys, or even by adults. But nothing in the situation made that outcome probable. In short, a series of new and unexpected causes intervened and had to intervene before these explosives could bring death to Perry. Not one of them was within the range of reasonable expectation. Boys discovered the hidden caps, stole a box, carried it to their home a half a mile away, and killed a playmate. His death was not the proximate result of the open chest in the highway.

We are not without apt precedents for this conclusion (*Moran* v. *Inhabitants of Watertown*, 217 Mass. 185; *Jacobs* v. *N. Y., N. H. & H. R. R. Co.*, 212 Mass. 97; *Afflick* v. *Bates*, 21 R. I. 281; *Hall* v. *N. Y. Tel. Co.*, *supra*). Indeed, the cases in other jurisdictions go farther than we need to go here, and farther, perhaps, than we should be willing to go. Very similar in its facts is *Moran* v. *Inhabitants of Watertown* (*supra*). Employ-

1916.]                Opinion, per CARDOZO, J.          [219 N. Y.]

ees of the defendant's sewer department left a tool chest in a highway, unlocked and unwatched. The chest contained dynamite. Some boys took sticks of dynamite out of the chest, and threw them on a bonfire which they built in an adjoining field. The plaintiff, who was standing with other boys about the fire, was badly burned from the explosion. The court held that the wrongful storage of the dynamite was not the proximate cause of the injury. Yet the case at bar is even a clearer one for the defendant. There the dynamite was exposed to view; here it was concealed. There the explosion followed close upon the trespass; proximity in time and place gave unity to the transaction: here the period of a day and the space of a half a mile intervened, and separated the theft from the explosion. The motives and impulses which provoked the theft had cooled; and a wrongful asportation had placed the thing of danger in new and strange surroundings (*Jacobs* v. *N. Y., N. H. & H. R. R. Co., supra*).

Nothing in our ruling is in conflict with the recognition of a duty to protect the young and heedless from themselves, and guard them against perils that may reasonably be foreseen. To define the orbit of that duty is unnecessary now (*Travell* v. *Bannerman*, 71 App. Div. 439; 174 N.Y. 47; *Union Pac. Ry. Co.* v. *McDonald*, 152 U. S. 262; *Walsh* v. *Fitchburg R. R. Co.*, 145 N. Y. 301; *Daniels* v. *N. Y. & N. E. R. R. Co.*, 154 Mass. 349; *Lynch* v. *Nurdin*, 1 Q. B. [A. & E. N. S.] 29; *Clark* v. *Chambers*, L. R. [3 Q. B. D.] 327, 331; *Harrold* v. *Watney*, L. R. [1898] 2 Q. B. 320, 322). It is enough to assume that there are times and circumstances that will call the duty into play. The remoteness of the relation controls our judgment, and distinguishes the case at hand from others where liability has been enforced. Thus, in *Travell* v. *Bannerman* (71 App. Div. 439; 174 N. Y. 47), the explosives were thrown into a vacant lot, they were apparently mere refuse, and the defendant ought to have

foreseen that a child would think itself at liberty to handle them. The situation was much the same in *Wells* v. *Gallagher* (144 Ala. 363). In other cases, the defendant intentionally put the dangerous implement in the hands of one incompetent to use it, and was chargeable with knowledge of the consequences. That was so in *Carter* v. *Towne* (98 Mass. 567), where gunpowder was sold to a child, and in *Dixon* v. *Bell* (5 M. & S. 198), where a loaded gun was given to an inexperienced maidservant, and in *Anderson* v. *Settergren* (100 Minn. 294), where in violation of a statute there was a sale of firearms to a minor. *Sullivan* v. *Creed* (2 Irish Rep. [1904] 317) is a case where a loaded gun was left beside a highway. That a traveler would innocently pick it up and injure a bystander, was held to be a consequence that might reasonably be foreseen. *Lynch* v. *Nurdin* (1 Q. B. [A. & E. N. S.] 29) is a case where a horse was left unattended in the street. The chance that some one would set it in motion was within the range of prudent foresight. Other cases, more or less similar in some features, are to be distinguished on like grounds (*Illidge* v. *Goodwin*, 5 C. & P. 192; *Clark* v. *Chambers*, L. R. [3 Q. B. D.] 327, 331; *Williams* v. *Eady*, 10 Times L. R. 41; *Powers* v. *Harlow*, 53 Mich. 507; *Mattson* v. *Minn. & N. W. R. R. Co.*, 95 Minn. 477). In none was there so tenuous a bond as here between the ensuing mischief and the wrong.

The judgment should be affirmed, with costs.

WILLARD BARTLETT, Ch. J., HISCOCK, CHASE, COLLIN and SEABURY, JJ., concur; HOGAN, J., concurs in result.

Judgment affirmed.