EDWARD H. FLAHERTY, an Infant, by JOHN H. FLAHERTY, His Guardian ad Litem, Respondent, *v.* METRO STATIONS, INC., Appellant.

Fourth Department, June 30, 1922.

Negligence — company maintaining large oil and gas tanks on vacant lot within city — children in habit of going to tanks with knowledge of defendant — complaint on behalf of boy nine years of age burned by gasoline taken from defendant's premises and thrown on fire considerable distance therefrom dismissed on doctrine of turntable case.

In an action on behalf of a boy nine years of age, brought on the theory that it was negligent for the defendant to leave gasoline in an open milk can at a place where boys were in the habit of going, a judgment for the plaintiff should be reversed and the complaint dismissed on the doctrine of the turntable case (145 N. Y. 301), where it appears that the defendant maintained two large oil tanks, one used for gasoline, on an open lot within the city, situate one hundred and twenty-five feet from the street, over which there was a private way leading to the tanks; that on the day in question the plaintiff, with two other small boys of about the same age, went to the premises of the defendant, took some gasoline from an uncovered milk can standing on the platform, threw some of it on each other's clothing and, when they reached a bonfire which they had previously built some considerable distance from the defendant's premises, one of the boys poured some gasoline taken from the can on the fire and it flashed up and burned the plaintiff, and there was evidence that boys on other occasions had taken gasoline from the open can and had used it to start fire on sticks, and that the defendant's superintendent in charge of the tanks knew or should have known that boys were in the habit of going there.

DAVIS, J., dissents in part, with memorandum.

APPEAL by the defendant, Metro Stations, Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cattaraugus on the 22d day of July, 1921, upon the verdict of a jury for $3,000, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*Harold J. Adams,* for the appellant.

*Patrick S. Collins,* for the respondent.

HUBBS, J.:

The defendant owns and operates two large oil tanks, situate one hundred and twenty-five feet from the street on an open lot in the city of Olean. One of the tanks is used for gasoline. There is a private right of way leading to the tanks which is used by vehicles. Delivery tanks are filled from these large tanks. In front of the tanks there is a wooden platform twelve or fifteen feet long and six feet wide. The tanks are contained in a depression in the ground but they are not inclosed by a wall, fence or building.

Fourth Department, June, 1922. [Vol. 202

On October twenty-second the plaintiff, nine years of age, with two other small boys of about the same age, built a bonfire. They then went to the premises of the defendant and took some gasoline from a milk can standing on the platform. They carried the gasoline in tin cans which they found. While going from the defendant's premises back to the bonfire they threw gasoline on each other's clothing. When they reached the bonfire, which was some considerable distance from the defendant's premises, one of the boys poured some gasoline from a can onto the fire. It flashed up and burned the plaintiff.

This action was brought and has been maintained on the theory that it was negligent for the defendant to leave gasoline in an open milk can at a place where boys were in the habit of going. The gasoline left in the milk can came from the drippings from hose used in filling the truck tanks. There was evidence from which the jury might have found that boys on other occasions had taken gasoline from this open can and that they had used it to start fires on sticks. A woman who lived in a house nearby had driven boys away. There was a path, used by boys, extending from the railroad track, and Mr. Marcus, the president of the defendant company, on two occasions had seen boys playing around the tanks. The jury might have found that Mr. Langmaid, the superintendent in charge of the tanks, knew or should have known that boys were in the habit of going there.

It is urged by the respondent that men of ordinary prudence would not, under such circumstances, permit a can of gasoline to remain exposed and unprotected on the platform, with the top of the can off. The trial court left it to the jury to say whether or not the defendant exercised the care and prudence of a careful person under the circumstances; also, whether or not, under the circumstances, the situation constituted a nuisance.

It is urged by the appellant that the motion for a nonsuit should have been granted and that the court should have held as a matter of law that the plaintiff had failed to make out a cause of action; that the plaintiff was either a trespasser or a bare licensee, and that the defendant owed him no duty of affirmative care.

It is conceded that the plaintiff did not have any business at the tanks and that he went there for the express purpose of taking the gasoline without the consent of the defendant and without its knowledge. It is urged that under those circumstances the defendant owed him no affirmative duty. Undoubtedly that is the general rule. (*Vaughan* v. *Transit Development Co.*, 222 N. Y. 79.)

However, the respondent contends that such rule has no application to the facts of this case and seeks to sustain the verdict on

the authority of *Travell* v. *Bannerman* (174 N. Y. 47). In that case the defendant was a manufacturer of guns and ammunition. Adjoining his plant there was an inclosed lot in which ammunition and explosives were kept. Outside of the inclosure was a vacant lot, also owned by the defendant, on which ashes and waste material were dumped. That open lot was used by boys for a playground and they rummaged in the ash heaps for scraps of brass and other things of that kind to sell. Two boys picked up a piece of black material resembling asphalt, imbedded in which were pieces of brass. They took it out into the street where the plaintiff, also a boy, was standing and attempted to extract the brass by pounding. That caused an explosion and the plaintiff was injured. The jury found that the defendant had negligently placed the explosive in the open lot and rendered a verdict for the plaintiff. The judgment was affirmed at the Appellate Division by a divided court (71 App. Div. 439). Judge WERNER, writing for the Court of Appeals, held that there was no evidence in the case that the defendant's employees had placed the explosive in the vacant lot, and the Appellate Division was reversed on that ground alone. In the course of the opinion he said: " If there is such evidence [that the defendant's employees placed the explosive in the vacant lot] then the question of the defendant's alleged negligence was properly submitted to the jury as one of fact."

It is upon that statement in the opinion that the respondent relies to affirm the judgment in the case at bar. The Appellate Division in that case placed its decision upon the ground that the explosive placed in the rubbish heap fell within the description of a dangerous and enticing machine, referred to in the opinion in the case of *Walsh* v. *Fitchburg R. R. Co.* (145 N. Y. 301), the turntable case. That is, the Appellate Division put it in the same class with a loaded gun or a spring gun, and held that the decision in the turntable case did not apply as that case was decided upon the ground of a defect in the premises. It will be noticed that the placing of the explosive in the ash heap was not a part of the regular conduct of the business of the defendant. In the turntable case the court laid stress on the fact that the defendant was engaged upon its own land, doing that which was necessary to be done in order to carry on the business properly, and held that under those circumstances the defendant was not liable for an injury to a child who came upon the land for recreation or other purposes not connected with the defendant's business. In that case the opinion in 78 Hun, 1, shows that children were in the habit of playing around the turntable as the evidence here shows that children were in the habit of going to the tanks. In this case the defendant was storing gasoline in the milk

can in the ordinary and regular conduct of its own business upon its own land and the plaintiff was not there for the purpose of transacting business with the defendant but was there for the purpose of unlawfully taking the gasoline. If we apply the reasoning of the opinion in the turntable case, there can be no recovery.

I do not find that the principle decided in the turntable case has ever been overruled in this State, and I think the facts in this case fall within the rule laid down in that case rather than within the principle announced in the case of *Travell* v. *Bannerman.*

The holding in the case of *Hall* v. *New York Telephone Co.* (214 N. Y. 49), where the employees of the defendant left a bottle of denatured alcohol beside the road which was taken by two boys to set a fire and one was injured, and the case of *Perry* v. *Rochester Lime Co.* (219 id. 60), confirm that opinion.

In the case of *Hall* v. *International Railway Co.* (184 App. Div. 925; affd., 227 N. Y. 619), no opinion was written either at the Appellate Division or in the Court of Appeals. The facts in that case were as follows: A boy six years of age, with other boys, went to the yard of the defendant company where trolley cars were kept immediately adjacent to a street. They played around there. It appeared that they played there before and had moved cars before. The power was on and all that it was necessary to do to move a car was to change the position of the control lever. One of the boys started a car and the plaintiff's intestate was killed. The only question submitted to the jury was whether or not the deceased and the other boys were on the defendant's private premises or were in a street. The jury found that in favor of the defendant. The case was tried before Mr. Justice SEARS and in the charge he said: " On a man's own property the only duty which he owes to a trespasser or to a bare licensee — and this young Edwin Hall was either a trespasser or a bare licensee — is not to intentionally injure that person, not to set traps, spring guns or traps to catch the person intentionally if he should come there and not actively by any act of commission negligently to injure such person." An exception was taken by the defendant and the question was raised in this court and in the Court of Appeals. It is difficult to see why the holding in that case is not a direct authority in favor of the defendant in this case. There we have the fact of the boys having been in the habit of playing around the cars and that they had moved cars before, so it cannot be said that the defendant could not anticipate that the boys would do just what they did do. Mr. Justice SEARS, in the charge, narrows the question of the defendant's liability down to the same position taken by the court in the turntable case.

I think, in view of these decisions, that we are bound to hold that the plaintiff failed to make out a cause of action. It is urged, however, that the Court of Appeals, by certain expressions in its opinions, has left the question open. For instance, in the *Perry* case the court said: "Nothing in our ruling is in conflict with the recognition of a duty to protect the young and heedless from themselves, and guard them against perils that may reasonably be foreseen. To define the orbit of that duty is unnecessary now. [Citing cases.] It is enough to assume that there are times and circumstances that will call the duty into play."

In *Hall* v. *New York Telephone Co.* the court said: "Neither was it such an apparatus or article as would induce or allure children to play with it."

Here there is evidence that this open can of gasoline did allure children and that they had been taking it for sometime previous to this accident. It is contended that the facts in this case distinguish it from the *Perry* and *Hall* v. *New York Telephone Co.* cases, but certainly the facts do not distinguish it from the turntable case, for in that case there was evidence that children were in the habit of playing with the turntable. I am of the opinion that we should follow the holdings in the four cases referred to. In *Hynes* v. *N. Y. C. R. R. Co.* (231 N. Y. 229) the Court of Appeals again seem to concede the rule to be as stated by Mr. Justice SEARS, in the charge to the jury hereinbefore quoted.

The trial court submitted to the jury the question of the defendant's negligence growing out of the violation of section 302 of the General Business Law, which provides for the kind of structure to be used where oil or its products are kept for sale or are stored in a city. I do not think that section has anything to do with this case. The purpose of that section was not to protect one in the position of the plaintiff and there was no causal connection between the violation of the statute and the happening of the accident. It is quite apparent that that statute was adopted to prevent the overflowing and spreading of oil from the place where it may be stored. Here the accident happened a long distance from the place where the gasoline was stored. (*Di Caprio* v. *N. Y. C. R. R. Co.*, 231 N. Y. 94.)

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

All concur, SEARS, J., in a separate memorandum, except DAVIS, J., who in a separate memorandum concurs for reversal, but dissents from the dismissal of the complaint and votes for granting a new trial.

SEARS, J. (concurring):

The doctrine of " attractive nuisance " on private property is in my opinion no part of the law of this State. A principle, however, analogous to that requiring wild animals and fire to be kept at one's peril seems applicable to the keeping of high explosives such as dynamite. I do not find the rule as yet extended to electric wires. The New York cases cited in the dissenting opinion arose for the most part from occurrences in the public highways where different principles apply. Further I would not be inclined to class gasoline at the present time as a dangerous explosive (like dynamite or powder). Though somewhat volatile and highly inflammable, it has come into such common use as to be classed rather as one of the every day necessities of modern life, concerning the keeping of which no such high responsibility should be imposed. I, therefore, concur in the opinion of Mr. Justice HUBBS.

DAVIS, J. (dissenting in part):

I favor reversal on the ground of error in the charge pointed out in the opinion of Mr. Justice HUBBS. But I dissent from the decision of the majority of the court in dismissing the complaint.

I am not prepared to concede that the rule of non-liability of a property owner to trespassers and licensees is strictly applicable to children of tender years.

It is often said that the doctrine of attractive nuisance does not prevail in this State. I think that is too broad a statement. Our courts have not followed the United States Supreme Court and the courts of many other jurisdictions in the turntable cases (*Walsh* v. *Fitchburg R. R. Co.*, 145 N. Y. 301), but I do not believe we are so entirely opposed to the prevailing authority in this country and England that it may be said that in this State young children are held to the same strict rule as adult trespassers and licensees.

To state it plainly, the question seems to be, may the owner of property place and leave on his premises which are frequently visited by young children without his express invitation, but attracted there, a highly dangerous explosive or other dangerous or destructive agency, and if such children are injured thereby, rely on the rule of law that he owes no duty to trespassers or licensees except that of refraining from doing them a wanton or willful injury.

There seems to have been eliminated in this and some other jurisdictions liability to children attracted to private property by turntables, ponds or reservoirs of water either natural or artificially created, and objects like lumber piles, quarries or sand pits. But in other cases where the danger artificially created is concealed or cannot be appreciated by the ordinary observer, the rule is

somewhat relaxed.    To except it from the rule regarding trespassers and licensees, it is sometimes placed on the ground of an implied invitation,— that is, where a person has some dangerous object that is naturally attractive and has knowledge that children do come upon his premises attracted by the object, an invitation to do so is implied.

Another ground of liability is the obligation of a social duty that a person is bound to protect the young and heedless, who cannot in a legal sense be trespassers through lack of judgment and understanding, and to guard them against perils which may reasonably be foreseen, when they are attracted to property by some childish instinct.    (Thomp. Neg. [2d ed.] §§ 1024, 1026, 1030.)    It is sometimes difficult to reconcile by sound reasoning the cases where liability is held to exist, with those where it is held there is no liability.

The cases most common where the owner is held liable for his want of care for so-called " destructive forces " are the cases involving explosives and high tension electric wires.

In *Travell* v. *Bannerman* (71 App. Div. 439), where the plaintiff was injured by an explosive picked up on a vacant lot owned by the defendant, it was held that he might recover on the ground that the lump or cake of gunpowder and pieces of brass would fall within the description of a dangerous and enticing machine. That case was reversed in 174 New York, 47, because of failure of proof that the defendant deposited the explosive on the lot. The principle as stated in the Appellate Division was not controverted.

In *Nelson* v. *McLennan* (31 Wash. 208; 60 L. R. A. 793) it was held that the storing of dynamite in a partially covered box in a vacant lot, to which children are accustomed to resort to play, is negligence which will render the one guilty thereof liable for injuries to children by the explosion of one of the sticks which was taken from the box by children playing on the lot, and ignited by one of them in ignorance of its explosive character.

In *Powers* v. *Harlow* (53 Mich. 507, 515), where a dangerous explosive was stored in a temporary open shed near a way where tenants of the land were accustomed to pass, its structure and location being such as naturally to invite the entrance of children for play or for shelter from snow or rain, the owner was held liable to a tenant's eight-year-old child who was on the premises by implied invitation and was injured by taking a percussion cap from an open box and exploding it without knowledge of its dangerous character.

In *Folsom Morris Coal Mining Co.* v. *De Vork* (61 Okla. 75;

L. R. A. 1917A, 1290), where cans which had contained blasting powder were thrown on the ground near the powder house, and the cans still contained small quantities of powder, and children came upon the premises and got them and carried them away and ignited the powder, causing an explosion, the defendant was held liable for the injuries resulting. In its facts that case is very similar to the one at bar.

In *Miller* v. *Chandler* (168 Ky. 606) it is said: The rule is "that where one stores dangerous explosives in a place upon his premises which he knows is accessible to and frequented by children, he does not exercise the ordinary care and reasonable precautions he is bound as a social duty to exercise to prevent accidents to children playing with or in the vicinity of such explosives."

*Mattson* v. *Minnesota & N. W. R. Co.* (95 Minn. 477; 70 L. R. A. 503); *Barnett* v. *Cliffside Mills* (167 N. C. 576); *Eckart* v. *Kiel* (123 Minn. 114); *Victor* v. *Smilanich* (54 Colo. 479); *Little* v. *McCord Co.* (151 S. W. Rep. [Tex. Civ. App.] 835); *Clark* v. *Du Pont Powder Co.* (94 Kan. 268, 279) and *Wallace* v. *Matthewson* (143 Ga. 236) are other cases where the owner or occupant of property is held liable for damage caused by explosives. There are many other authorities. (See L. R. A. 1917A, 1295 *et seq.* note; 12 N. C. C. A. 871, note; 17 id. 414 *et seq.* note.)

The case of *Perry* v. *Rochester Lime Co.* (219 N. Y. 60) is not in principle opposed to these authorities. It simply held that under the facts of that particular case there could be no recovery, and as Mr. Justice HUBBS has pointed out, did not lay down any general rule of non-liability in such cases.

In the electric light cases where the injury occurs by reason of a harmless looking but deadly wire, the doctrine of implied invitation or license is extended to cover liability in the case of children playing in the vicinity, and the rule of non-liability to trespassers or licensees is not applicable. (*Wittleder* v. *Citizens' Electric Ill. Co.*, 47 App. Div. 410; *Robertson* v. *Rockland L. & P. Co.*, 187 id. 720; *Meehan* v. *Adirondack Power Corp.*, 88 Misc. Rep. 235; *Temple* v. *McComb City E. Light & Power Co.*, 89 Miss. 1; 42 So. Rep. 874; *Consolidated Electric Light & Power Co.* v. *Healey*, 65 Kan. 798; *Daltry* v. *Media Electric Light, etc., Co.*, 208 Penn. St. 403.)

There are other cases representing concealed destructive forces where the rule of liability has been applied.

In *Union Pacific R. Co.* v. *McDonald* (152 U. S. 262), where a railroad company operating a coal mine deposited slack in an open lot between the mine and its station, in such quantities that the slack took fire and was in a permanent state of combustion, a lad

twelve years old was running and fell on and into the slack and was badly burned; and it was held that the company was guilty of negligence.

In *United Zinc & Chemical Co.* v. *Britt* (264 Fed. Rep. 785), the defendant maintained a pool of water which was attractive to boyish instincts and impulses as a place to go in bathing. The public crossed the premises at will so that they had made a footpath leading by the pool. Boys who went in bathing were killed by poisonous chemicals with which the water was impregnated. It was held that the owner's liability was properly submitted to the jury.

In *Peirce* v. *Lyden* (157 Fed. Rep. 552) the facts are similar to those in the instant case. There the defendant maintained a shed in a railroad yard of about two acres near a schoolhouse in a city, in which he kept open barrels of oil. During the day time the shed was left unlocked and for several months children in the vicinity who played in the yard had been in the habit of stealing oil from the barrels in old cans and making fires in the yard, which facts were known to the defendant's watchman. On one such occasion the plaintiff, an infant, was burned and injured. It was held that the defendant was chargeable with notice of such practice of the children from its long continuance and the knowledge of his watchman, and the question of his negligence in keeping the place in such condition, in view of the danger of their injury therefrom, was for the jury. (See, also, *Northern Pac. Ry. Co.* v. *Curtz,* 196 Fed. Rep. 367.)

Gasoline is a volatile liquid highly explosive and highly combustible. That it is so generally recognized accounts for section 302 of the General Business Law, which regulates the kind of buildings in which it may be stored to prevent its spreading where it may explode or burst into flame. It is when stored near a dwelling house regarded as a private nuisance because of its combustible and explosive character. (*Whittemore* v. *Baxter Laundry Co.,* 181 Mich. 564; 148 N. W. Rep. 437; 52 L. R. A. [N. S.] 930.)

In this case there was a lot crossed by a footpath in common use near the place where this explosive and highly combustible fluid, harmless in appearance, was kept. Young children were attracted there and resorted to the premises taking away the gasoline to the knowledge of the defendant and starting fires with it. No effort was made to prevent their doing themselves harm with this dangerous agency thus left exposed. I think in this case there are principles of liability generally recognized.

In my opinion questions of fact were presented as to whether the children were on the premises by implied invitation, and

defendant failed in the exercise of its social duty and the ordinary offices of humanity reasonably to anticipate the injury likely to occur and to take reasonable precaution to guard against such injury; and whether or not the chain of causation was broken by an efficient factor relieving defendant of liability. (*Mathis* v. *Granger Brick & Tile Co.*, 85 Wash. 634; *Vallency* v. *Rigillo*, 91 N. J. L. 307; 102 Atl. Rep. 348.)

I favor the granting of a new trial.

Judgment and order reversed and complaint dismissed upon questions of law only, with costs.