**RASMUSSEN et al. v. PALMER et al.**
**No. 171.**

Circuit Court of Appeals, Second Circuit.
April 15, 1943.

Pickard, of New Haven, Conn., of counsel), for appellees.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

Harry Rasmussen, Jr., a boy eleven years old, was playing with two other boys in the early evening of September 9, 1941, in the railroad yard in New Rochelle, N. Y., which the defendants operated as trustees of the owner in reorganization, the New York, New Haven & Hartford Railroad Company. He climbed to the top of a freight box car then standing in the yard and as one of his arms was raised when he pretended to shoot a toy pistol it struck a wire strung a half inch over five feet above the roof of the car. This was a live wire carrying an electric current of eleven thousand volts and the boy was so injured that one of his arms and one of his legs had to be amputated.

This suit was brought in the state court by Harry Rasmussen, the father of the boy, as guardian ad litem for his son and individually to recover his own damages. It was duly removed to the District Court for the Southern District of New York where it was tried to a jury. At the close of the plaintiff's case the defendants moved for a directed verdict. The motion was granted and judgment on the verdict was entered. From this judgment the plaintiff has appealed.

The car in which the boy was hurt was standing in the yard some 150 feet from where the public had for years been crossing the yard to make use of a short cut between two public streets bordering the railroad property in that vicinity. There was a weather-beaten, partly legible sign nearby which had been used to forbid trespassing upon the railroad's property, but this sign had been practically ignored for years. It must be now taken as amply proved that the public not only used the yard as a short cut but also that children frequently used it to play in regardless of the sign and to the knowledge which must be imputed to the defendants. There must also be imputed to the defendants knowledge that one boy had climbed a freight car in that yard while playing there a few years before and had been fatally injured but just how he was hurt did not appear. There was also the evidence of one witness that he had seen children climbing on freight cars twice in eighteen years and

Rubin & Rubin, of New Haven, Conn., for plaintiffs-appellants.

E. R. Brumley, of New York City (R. J. Seifert, of New York City, and R. W.

of another who had lived near the yard for thirty-eight years who testified that she had seen the one some years before who had been so injured that he died and that she had seen no others until the Rasmussen boy was hurt. The other evidence, considered with what has been specially mentioned, made it plain that such children as the boy who was hurt before the accident were permitted by the defendants without objection to play in the railroad yard frequently; that no fence to keep them out was maintained and no watchman made any attempt to do so; and that at extremely rare intervals, something like three times in eighteen years or so, boys had been seen to climb upon the cars and that one of those boys had been mortally hurt in so doing.

In such a case we are, of course, to apply the state law. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Under the applicable New York law this boy was not a trespasser while he was playing in the railroad yard but was, because of a long acquiescence of the defendants in the playing of children there, a licensee to whom the defendants owed the duty to exercise reasonable care to protect him from injury while so engaged. Zambardi v. South Brooklyn R. Co., 281 N.Y. 516, 24 N.E.2d 312; Lamphear v. New York Central & H. R. R. Co., 194 N.Y. 172, 86 N.E. 1115; Skzypek v. Long Island R. Co., 275 N.Y. 508, 11 N.E.2d 318. Nor does § 83 of the New York Railroad Law, Consol.Laws, c. 49, or § 1990 of the New York Penal Law, Consol.Laws, c. 40, deprive such a person of the right to have such care exercised for his protection. Zambardi v. South Brooklyn R. Co., supra.

There being no conflict in the evidence as to what the defendants did or failed to do, the decisive question is whether under New York law there was any debatable issue to make what was reasonable care a question for the jury under the circumstances shown here. The question may be put as follows: Having given the boy a license to play in the railroad yard could the defendant leave a box car there with other cars on one of its tracks with a live high voltage wire only what we may call five feet from its roof and within the reach of an eleven year old boy who might climb to the roof of the car while playing in the yard and still be in the exercise of reasonable care toward the boy?

Since Walsh v. Fitchburg R. Co., 145 N.Y. 301, 39 N.E. 1068, 27 L.R.A. 724, 45 Am.St.Rep. 615, it has been clear that what has been called the doctrine of attractive nuisance is not applicable in New York. Ordinarily in New York "the only duty which an owner of land owes to a trespasser or bare licensee is to abstain from affirmative acts of negligence or not to injure intentionally such person." Morse v. Buffalo Tank Corp., 280 N.Y. 110, 19 N.E.2d 981, 983. But the avoidance of whatever may be "affirmative acts of negligence" may require in practice more or less as circumstances vary. When a licensee going upon the land may be imperiled from a concealed danger the owner or possessor of the property is bound to protect him from it by taking whatever steps to that end are, under the circumstances, reasonable in the face of this risk. Travell v. Bannerman, 174 N.Y. 47, 66 N.E. 583. See, also, Perry v. Rochester Lime Co., 219 N.Y. 60, 113 N.E. 529, L.R.A.1917B, 1058.

Had there been no live wire in the yard this case would be clearly within the principle of Walsh v. Fitchburg R. Co., supra. Leaving a box car unguarded on a track in a freight yard would call for no greater precaution to be taken for the benefit of children who played in the yard than would maintaining a turntable there.

But a wire carrying high voltage electricity is an inherently dangerous thing. The presence of current in such a wire does not change its looks ordinarily and when it does not there is nothing about it which would warn a boy like this plaintiff that it was dangerous and to give it a wide berth or at least to keep far enough away to avoid an electrical shock. The defendants seem to have maintained the live wire (and another nearby) in good and proper condition for needed use in operating their railroad. There was nothing to indicate that it was carrying current. Nor was there anything to indicate that the wire could have been used as was necessary to operate the yard and been placed elsewhere or been insulated.

All this being so and the defendants being bound to use reasonable care to protect licensees like this boy from the danger of injury from the live wire, the decisive factor in this appeal is not precisely whether they did so but whether or not they so clearly did so that the point was not even sufficiently debatable to leave to the jury. On that question we have on the one hand

the hidden danger cases like Travell v. Bannerman, 174 N.Y. 47, 66 N.E. 583, where some explosive substance left on an unfenced and unguarded dump caused injury to a child and the liability of whoever might have so left it was recognized though the proof in that regard was held short as to the defendant; and on the other the group to which those cases like Adams v. Bullock, 227 N.Y. 208, 125 N.E. 93; Earley v. New York Tel. Co., 263 N.Y. 424, 189 N.E. 479; and Brown v. American Manufacturing Co., 209 App.Div. 621, 205 N.Y.S. 331, belong. Always the test is what likelihood if injury from present danger should have been foreseen and what steps it would have been reasonable to take to prevent it. Always that requires balancing the need for protection against the ease, or the contrary, with which it may be provided and determining what is reasonable in the light of all such factors. Heller v. New York, N. H. & H. R. Co., 2 Cir., 265 F. 192, 17 A.L.R. 823. Sometimes the application of the test produces a result so clear that it may be the duty of the court to make it. That was true in the Adams case, supra, where a boy, who as a licensee was walking across a railroad bridge and swung a wire over the side of the bridge into contact with the defendant's overhead trolley wire carrying current. He was injured and obtained a verdict on which judgment was entered. That was reversed on the ground that the evidence was insufficient as a matter of law; though apparently the complaint went beyond the proof and stated a cause of action as a new trial was granted. Likewise it was true in the Earley case, supra, where a boy climbed a wire hanging from a telephone pole in a city street to enable him to try to climb the pole on spikes one of which gave way to let him fall and be hurt. And so too in the Brown case, supra, where a boy who of right could go to the base of a steel tower supporting live wires carrying high tension electrical current, climbed the tower and was hurt by coming into contact with such a wire.

■ We realize that the courts in New York require what may be proper care in each instance to be determined in the light of the proclivities of children like this boy to climb when the chance to do that is present. Climbing a box car is not, of course, beyond such reasonable expectations. But the evidence in this record itself sheds much light on what should have been anticipated about that. Witnesses who

had often seen children play in the yard had seen them climb the cars there so rarely that it would average no more than once in several years and even this did not show whether they had climbed to the top of box cars before. That they would not only climb that much but that one would also reach up into contact with a live wire would be even more unlikely. Yet so long as children had the opportunity to climb and reach they might do so sometime as the defendants were bound to foresee. Whether they could within reason have removed even that danger depends of course upon whether what was needed to do so required effort unreasonably greater than the risk. We know that keeping the children entirely out of the yard would have done away with that danger but the fencing and the watching that would have been required was not shown and we cannot say offhand that it would have been a reasonable, or even a feasible, precaution for the defendants to take. We must assume that they had to use the yard in their business and that they had to leave box, and other, cars there. We have no means of knowing the extent of what changes would have been required to raise the live wire so far above the roofs of box cars that such accidents as this would be more surely avoided; nor whether such changes would have extended, beyond wiring, to the accommodation of the equipment to the higher wires and the accommodation of still other things to those changes in equipment. The plaintiff did not, therefore, produce prima facie proof that the defendants failed unreasonably to guard this boy from harm while he was playing on their property, not maintained as a playground for him but for their own business use. This is what serves to distinguish Tierney v. New York Dugan Bros., Inc., 288 N.Y. 16, 41 N.E.2d 161, 162, 140 A.L.R. 534. That defendant was not only using its own premises in a way necessary and customary in doing its work but had in so doing created in the street a situation dangerous, attractive and easily accessible to the children playing there. As stated in that opinion, "here the defendant, in connection with its business, was practically using the sidewalk as a part of its automobile platform."

The trial judge, therefore, correctly applied the New York law to the undisputed facts and we find no error in the judgment. Cf. New York, N. H. & H. R. Co. v.

784

Fruchter, 260 U.S. 141, 43 S.Ct. 38, 67 L.Ed. 173.

Judgment affirmed.