JOSEPH BAILLARGEON, an Infant, by WILFRED BAILLARGEON, His Guardian ad Litem, Plaintiff, *v.* CHAZY LIME AND STONE COMPANY, INC., Defendant.

WILFRED BAILLARGEON, Plaintiff, *v.* CHAZY LIME AND STONE COMPANY, INC., Defendant.

Supreme Court, Special Term, Clinton County, September 3, 1953.

*Robinson & Holcombe* for defendant.

*John P. Judge* for plaintiffs.

GIBSON, J. Plaintiffs proceed upon the theory that two series of negligent acts and omissions, successive in point of time, were proximate causes of the accident. The first series commenced with the improper storage of the dynamite and caps and ended when the infant plaintiff and his companions removed a quantity of each. The second series involved the apparent failure of defendant, after some interval of time, to discover the loss, report it to the police authorities and thereupon, through its own efforts or that of the police, either to recover the property (then actually secreted upon its own premises) or to warn the public, including the children concerned, of the existing danger.

The most recent cases bearing on the subject of this litigation are *Kingsland* v. *Erie Co. Agric. Soc.* (298 N. Y. 409, decided Jan., 1949), affirming plaintiff's recovery, and *Hallenbeck* v. *Lone Star Cement Corp.* (273 App. Div. 327, affd., without opinion, 299 N. Y. 777, July, 1949), in which a judgment for plaintiff was reversed and the complaint dismissed. One of the leading cases is *Perry* v. *Rochester Lime Co.* (219 N. Y. 60), and the opinion of Judge CARDOZO therein is frequently cited.

All three cases involved, as do the instant cases, injuries to children by explosives wrongfully taken by those or other children, those in the cases cited being, in age, thirteen and twelve in the first, thirteen and fifteen in the second and twelve and thirteen in the third. In the complaints herein the child is alleged to be twelve years of age at the time of the commencement of the actions, about seventeen months after the accident.

In each of the cases cited the defendant was clearly negligent and the complaints herein sufficiently allege this defendant's negligence.

In the *Kingsland* case the explosives were exposed or partially exposed in an open box (p. 423), in the *Hallenbeck* case they were within a locked shack on the floor of a quarry to which the children descended by a rope thirty-eight feet in length and in the *Perry* case they were in a tin box placed in a closed wooden box which in turn was within a chest which was open. In the instant cases it is alleged that the defendant " stored large quantities of dynamite sticks or high explosives in an ordinary box, and a short distance therefrom stored dynamite caps and detonating caps in an ordinary oil drum or barrel both of which were located in a pit, stone-quarry, dug-out or excavated area where large quantities of stone had theretofore been removed " and, further, " that said dynamite both as to the box and barrel were illegally stored and left out in the open easily accessible to Children ". The effect of these allegations will be hereinafter discussed.

In the *Kingsland* case the location was one exceptionally attractive to children, that in the *Hallenbeck* case was difficult of access and on private property and that in the *Perry* case was on public lands frequented by children. In the instant cases the complaints allege " that for a long period of time and for many years, children living within the vicinity of the above-described property have always played in and about the premises of the defendant with the knowledge and consent, actual or constructive, of the defendant and by the implied invitation and consent of the defendant ". There are further allegations of the same nature and additional allegations to the effect that defendant knew or should have known of the taking of the explosives, saw or should have seen the infant plaintiff and his companions on the premises at the time, but failed to alarm the police authorities or to report the loss of explosives (Labor Law, § 455). The negligence of the defendant by reason of the acts and omissions hereinbefore termed the " first series " being conceded for the purposes of this motion, these allegations seem important only as respects the second series of negligent omissions charged and will be later discussed in connection therewith.

The principal if not the only disputed issue in the three cases above cited was that of proximate cause and that would seem the issue here. The defendant, being a wrongdoer, was " answerable as such for the proximate consequences of the wrong. It became answerable, in other words, for those consequences that ought to have been foreseen by a reasonably prudent man " (*Perry* v. *Rochester Lime Co., supra,* p. 63).

In the *Perry* case (*supra,* p. 64), the consequences were not reasonably foreseeable. '' The chest, it is true, was open, but the caps were not exposed. * * * The defendant had done nothing to invite or provoke this theft. It had not scattered the caps about, or even exposed them to view, so that children might feel tempted, and perhaps licensed, to handle and play with them.'' Continuing the discussion of proximate cause, the court said that nothing in the situation made a theft of the caps probable and that: '' In short, a series of new and unexpected causes intervened and had to intervene before these explosives could bring death to Perry. Not one of them was within the range of reasonable expectation. Boys discovered the hidden caps, stole a box, carried it to their home a half a mile away, and killed a playmate. His death was not the proximate result of the open chest in the highway ''.

It seems clear that the primary distinction between the *Perry* case, as above quoted, and the *Kingsland* case, in which the plaintiff prevailed, was that in the latter the explosives were exposed, as appears at page 423: '' Thus there was evidence from which the jury could find that defendants had left harmless looking, but highly dangerous, bombs exposed and unguarded in a place of public amusement where a large number of people including children were known to be present. Clearly, the triers of the facts could find that defendants should have foreseen the probable result that children would take those apparently discarded bombs and that they, their playmates or some other child who might come in contact with the bombs would explode them and be injured thereby.''

The conclusion that the fact that the bombs in the *Kingsland* case were exposed was the distinguishing factor is buttressed by a reading of the detailed discussions thereof both in the prevailing opinion (pp. 424-426) and in the dissenting opinion as well (pp. 434-435).

In the *Hallenbeck* case, the explosives were in a locked shack at a location very difficult of access.

The complaints in the instant cases do not, and without improperly stating evidentiary facts in great particularity perhaps could not, clearly bring these actions within the rule of the *Perry* and *Hallenbeck* cases on the one hand or that of the *Kingsland* case on the other. Proof is necessary to indicate whether the explosives were hidden as in the *Perry* and *Hallenbeck* cases or exposed within open containers as in the *Kingsland* case; whether the '' pit, stone quarry, dug-out or excavated area '' in which the containers stood was open to

view or in some way closed or barricaded, and near and readily accessible from a highway or other public place or relatively remote and difficult of access. Proof may properly be adduced as to whether, within the actual or constructive knowledge of the defendant, children played at the location of the dugout and, if so, in what numbers and how frequently, such proof bearing not on the infant plaintiff's status on the property, immaterial in view of the inherent danger of the explosives (*Kingsland* v. *Erie Co. Agric. Soc., supra,* p. 423) but appearing to be competent under the *Kingsland* case on the theory that the probability of a result such as here actually ensued would increase in proportion to the number of children playing nearby and to the frequency of their visits, up to a point where, with the other evidence in the case, it might properly be held that that result was reasonably foreseeable. Proximate cause is necessarily one of those intangible elements dependent on proof and difficult, if not impossible, of pleading in terms which can be weighed and analyzed on a motion of this character.

As to the second series of negligent omissions, occurring after the taking of the explosives, it may well be that no testimony as to proximate cause can be adduced that will not be conjectural and speculative in character. However, the allegations appear proper and sufficient to permit plaintiffs to prove, if they can, that sufficient time elapsed to charge defendant with knowledge of the taking and that defendant had sufficient information as to the identity of the children then or frequently on the property to enable the police authorities to warn the children concerned in the taking or to recover the explosives or both, had the loss been reported pursuant to the Labor Law.

In view of the determinations above stated it is unnecessary to pass on plaintiffs' contention that the cases involve additional questions of fact as to the maturity and experience of the infant plaintiff and his incapacity to recognize the wrongful character of his act and the risk and danger involved, such contention having some support in other jurisdictions and perhaps here (*Hallenbeck* v. *Lone Star Cement Corp., supra,* p. 334).

The motions are therefore denied and order may be submitted accordingly.